ELLA THURBER AND JOHN THURBER, RESPONDENTS, v. SKOURAS THEATRES CORPORATION, APPELLANT.

Submitted October 13, 1933—Decided February 6, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the appellant, *Edward Griffin.*

For the respondent, *Armstrong & Mullen.*

The opinion of the court was delivered by

LLOYD, J.  Plaintiff below brought suit against the operator of a moving picture theatre to recover damages for injuries received in a fall through being pushed down by other patrons of the theatre.  She obtained judgment in the District Court and the defendant appeals, contending that there should have been a nonsuit or direction of a verdict in its favor.

The facts as exhibited by the plaintiff's proofs were that at the time the plaintiff and her granddaughter entered the theatre the seats were filled and they remained standing in the lobby for sometime. At the conclusion of a showing of the picture the ropes were withdrawn and they started down the aisle. When half way down the plaintiff was pushed by some person or persons behind her and she fell. It was testified that there was a large crowd; that there might have been one hundred people in the lobby when the ropes were withdrawn. Plaintiff, a woman seventy-three years of age, answered a question that it was done (that is, her being knocked down) by so many people behind that she could not tell who did it, and that there were no ushers in the aisle. The granddaughter who was with her said there was a terrible crowd; that she and her grandmother were the first ones, and after the show was over and those who wanted to go out were gone, the ropes were let down and the people started to push through; that she and her grandmother were walking down the aisle, then the rush came, people were not exactly running but were hurrying to get seats before the second show started. In the rush they knocked her grandmother down. She afterwards qualified this by saying that they were walking fast; she and the plaintiff doing the same thing. The plaintiff likewise on cross-examination said that they walked down and that others walked down behind them and suddenly she felt a push. The contention seems to be that because the crowd was let in and no one thereafter controlled them in the aisle, this constituted negligence.

Our consideration of these proofs leads us to the conclusion that they fail to exhibit a cause of action against the appellant. There are undoubtedly cases in which injurious consequences of failure to control crowds may create liability. Such are *Hansen* v. *North Jersey Street Railway Co.*, 64 *N. J. L.* 686; *Sandler* v. *Hudson and Manhattan Railroad Co.*, 8 *N. J. Mis. R.* 537; 151 *Atl. Rep.* 99, and *Egner* v. *Hudson and Manhattan Railroad Co.*, 109 *N. J. L.* 367; 162 *Atl. Rep.* 554, but in all of these cases, which were between passengers and carriers where even a higher degree of care

than here exists applied, emphasis is laid not on a duty to avoid over-crowding, but on a duty to use care to avoid the dangers likely to arise therefrom, at entrances and exits of the carrier's cars. No case has been brought to our attention where permitting over-crowding, whether in places of amusement or elsewhere, has been held to constitute negligence. Indeed, the cases cited by respondent respecting theatre shows all seem to recognize this, and in none of them is injury from a merely crowded condition of the theatre held to be actionable. In *Dondero* v. *Tenant Moving Picture Co.,* 94 *N. J. L.* 483, it was a pitfall in a darkened passageway. In *Heine* v. *Acme Theatre Co.,* 5 *N. J. Mis. R.* 164; *affirmed,* 104 *N. J. L.* 171, the lights were turned off and the plaintiff fell over a hidden platform. In *Andre* v. *Merten,* 88 *Id.* 626, it was also a question of failure to provide light in a dangerous situation.

It is of course the law that patrons of places of amusement as well as of the various means of transportation assume the risk of the dangers normally attendant thereon. These are accepted as incident to the enjoyment of or acceptance of the service which they afford.

We likewise cannot close our eyes to the fact of common knowledge that motion picture theatres repeat the same picture at intervals during the day and evening and that as each exhibition is concluded many persons leave the building and many others who have been held back take their places. Incident thereto is the hurry to obtain seats, and of this all patrons of such places are well aware.

From all that appears we have just such a situation here presented. There was, however, nothing in the proofs to suggest that the crowd was other than usual when a popular picture is being shown, or that its conduct was out of the ordinary, or of a character calculated to endanger the plaintiff who with others was seeking to procure seats. Remembering that it is not the crowding, which of itself imposes no duty, but dangers likely to arise therefrom, what was the danger to be apprehended here? There was nothing unusual about the crowd or its actions. When the ropes were withdrawn

those waiting to enter passed through, plaintiff well in advance. It is said that they hurried, but the hurry consisted in walking fast, certainly nothing to suggest to the ushers that danger threatened.

Crowds are a part of our life in populous centres; a popular show, a ball game, a parade, a showily dressed store window, attract and bring about the congregation of large assemblages of people. Even an ordinary store during certain periods may be so crowded with patrons that movement is effected with difficulty. In none of these is danger normally to be anticipated and none is provided against unless indeed under conditions (not here present) which in themselves suggest danger. There is no suggestion in the present case that the aisle was not of suitable type and construction, or that the hurry of the patrons to obtain seats was other than what usually occurs in such cases; nothing to suggest that any risk was being incurred by those seeking seats.

The judgment is reversed.