**PASCHALL–TEXAS THEATRES, Inc., v. WAYMIRE et al.**

No. 4632.

Court of Civil Appeals of Texas. Texarkana.
March 22, 1935.

Rehearing Denied April 11, 1935.

768

Handley & Shaeffer and R. T. Bailey, all of Dallas, and Pollard, Lawrence & Lux, of Tyler, for appellant.

Ramey, Calhoun & Marsh and Ben A. Harper, all of Tyler, for appellees.

HALL, Justice.

This is a suit brought by Mrs. B. W. Waymire, joined by her husband, B. W. Waymire, against appellant, the owner and operator of the Queen Theater in the city of Tyler, Smith county, Tex. The appellees, Mr. and Mrs. Waymire, alleged that by invitation of the appellant Mrs. Waymire bought a ticket and entered said theater for the purpose of seeing a motion picture therein; that while she was seated in said theater, and while said motion picture exhibition was in progress, there was a violent explosion followed by fire which occurred therein. The explosion was without warning to appellee, and the said inflammable substances and explosives in said bomb or other instrumentality caused the appellee, Mrs. Waymire, serious permanent, personal, bodily injuries. Appellees alleged, first, that said bomb or other instrumentality was caused to explode and discharge by the agents and employees of appellant; and, second, they alleged that they knowingly permitted said bomb or other instrumentality to be discharged near to appellee Mrs. Waymire. In the alternative they alleged, if they be mistaken in the allegations that the appellant's agent threw the bomb, or knowingly permitted the same to be thrown or placed, then that they, the agents of appellant, had good and sufficient reason to believe and to know that some such act as that which caused the injury to appellee Mrs. Waymire would likely be committed by other persons in the theater and that the appellant had been warned that

some such injury might occur. Appellees alleged that the appellant was negligent in the following particulars:

"(a) Because it failed to place or maintain guards in constant attendance on its theater for the protection of the general public, including the plaintiff, from depredation and injury at the hands of the person or persons who might commit the act complained of, that is, the placing and explosion of the bomb or other instrumentality;

"(b) That the defendant was guilty of negligence because, knowing that some person or persons were likely to and had threatened to commit some depredation upon the defendant's property and patrons in and at the theater, defendant carelessly and negligently failed to maintain a sufficient guard at and around said theater for the safety and protection of the patrons.

"(c) That the defendant was negligent in failing to constantly maintain a guard or guards on duty within the theater; and in failing to have such guard constantly patrol the aisles thereof with proper equipment to inspect and discover said bomb and prevent the explosion thereof.

"(d) That the defendant was negligent in that at the time and place failed to exercise ordinary care to discover the said bomb or other explosive and to remove same before the explosion.

"(e) That the defendant was guilty of negligence in failing to adequately watch and inspect persons entering said theater and in allowing any person or persons to take such explosive into the theater.

"(f) That the defendant, its agents and employees, were negligent in allowing the plaintiff to go into the theater at a time when it was known to them to be a place of danger and a place where the plaintiff was not safe and was exposed to violence, without warning her of the danger likely to be experienced.

"That each of the foregoing allegations was not the conduct of a person of ordinary prudence, and that each of said acts and omissions was negligence and each of them a proximate cause of the injuries to the plaintiff. That as a result of the above enumerated acts and omissions on the part of defendant, the explosion took place and the plaintiff's clothing was ignited and the flesh upon her body, arms and legs was severely burned, as a result of which she was compelled to go to a hospital and remain under a physician's care, was confined to her room; that she suffered

excruciating and intense mental and physical pain; that her nervous system was severely shocked, and she laid her damages at the sum of $2,000.00."

To this the defendant answered by plea of misjoinder of Mrs. B. W. Waymire, general demurrer, special demurrer to the joinder of Mrs. B. W. Waymire, general denial, and by special plea that the injuries, if any, of the plaintiff Mrs. Waymire, were caused solely by the intervention of independent, willful, malicious, and criminal acts of third parties over whom defendant had no control; that said parties were unknown to the defendant; that they had no connection with the management or operation of the theater; that said bomb or other explosive was caused to explode by third parties in a manner unknown to defendant and concealed and secreted from defendant, and was so placed, set off, and exploded suddenly and without warning to the defendant and its agents, and without those in charge of the management and operation of the theater having any knowledge of the intention of said third parties to so place, set off, and explode, or cause to be exploded, said bomb, and without those in charge of the operation and management of the theater having reasonable cause to anticipate or foresee the acts of said third parties and prevent same; that the manager of the theater on the occasion in question had the right to rely, and did rely, upon all persons entering the theater properly demeaning themselves and observing the penal laws of the state of Texas; that the bomb set off and exploded was in violation of the penal code of the state of Texas, and that this criminal act was the sole proximate cause of the injuries of which plaintiff complains; that the injuries to plaintiff were caused, solely and proximately, by causes entirely independent of any acts or omissions of the defendant, and as a sole result of the acts of plaintiff and others over whom the defendant had no control; and that, as far as the defendant was concerned, the injuries to the plaintiff were the result of an accident.

At the conclusion of the testimony, the defendant, in timely manner, requested an instructed verdict in its favor which was overruled, and the case was submitted to the jury upon special issues. Said special issues were answered favorably to appellee, and judgment was rendered thereon for her in the sum of $1,150, from which appellant prosecutes this appeal.

Appellant brings forward in its brief 127 assignments of error. From the view we take of this case, it will not be necessary to discuss all the assignments brought forward, but we shall discuss only the assignments having to do with the vital question in this case. The question in this case, in our opinion, which is determinative of all other questions raised, is: Was any act or omission on the part of appellant's agents the proximate cause of the injury to appellee Mrs. Waymire? This seems to be a case of first impression on this question. Attorneys for appellant and appellees have filed exhaustive briefs citing, in our judgment, every important case that has any bearing upon the question here involved. These briefs have been of great assistance to us in arriving at what we think is the correct decision of this case.

There is no allegation nor proof that appellant's agents knew of any vicious person being in the theater at the time Mrs. Waymire purchased a ticket and entered same. Testimony was introduced by appellees, and we think properly so, to the effect that a man by name of Veazey, who was agent for the striking picture show operators, told Stalcup, the manager of appellant, that he was going to show him how "bad" or how "hot" they could be this time; meaning, so Stalcup understood, that they were going to resort to more violent tactics than they did before during a previous strike when there was placed in the cooling system of the same theater, while same was owned and operated by appellant's predecessor, itching powder and phosphorus. Stalcup stated that he anticipated some violence on the part of the strikers or some of their sympathizers, and that on account of said anticipated trouble he sought the protection of the police of the city of Tyler, members of the State Ranger Force, and the sheriff's department, and, in addition thereto, hired three guards of his own choosing. Stalcup testified, further, as did the janitor of one of the theaters, that two or three days before the explosion which caused injury to Mrs. Waymire the janitor found a black object rolled up in a sock which he picked up and threw out the back of the theater; that later something exploded at the back of the theater, and they were unable to find any of the black object previously thrown out. They supposed that this was the object which had exploded. Stalcup and other witnesses testified that a short time before the explosion which caused the injury to Mrs. Waymire an explosion had occurred in one of the other theaters of appellant in the city of Tyler. The agents of appellant testified that they watched patrons as they entered, especially any suspicious character;

that the guards looked behind the screen for any bombs or explosives; that the operatives of the picture show looked under some of the seats and down the aisles with flashlights for bombs or explosives. They testified, further, that they did not search patrons as they came in, nor did they advise any of them that they were in danger of being injured should they go into the theater.

■ It is conceded by both appellees and appellant that the appellant owed to appellee Mrs. Waymire and other patrons of the theater ordinary care for their protection.

Appellant in his brief cites numerous authorities. The one most nearly in point, we think, is Houston & T. C. Ry. Co. v. Phillio, 96 Tex. 18, 69 S. W. 994, 995, 59 L. R. A. 392, 97 Am. St. Rep. 868. Chief Justice Gaines, speaking for the court, said:

"The following is the statement of this case, together with their conclusions upon the evidence, filed by the court of civil appeals: 'This is an action by the appellee, Steve Phillio, against the railroad company to recover damages for injuries sustained, arising from the following state of facts, which are as substantially alleged in his petition: Plaintiff and his wife went to the depot of the appellant's road in the town of Calvert for the purpose of procuring a ticket for his wife to the town of Marlin. She at the time was sick and in feeble condition. While waiting in the waiting room of the depot for the train, and after the ticket had been purchased and the baggage checked, the defendant permitted one Allen, who was alleged to be a strong, active, and robust white man, and being in a drunken and rowdy condition, to sing vulgar and indecent songs and use vulgar and indecent language in the presence of plaintiff and his wife, and, being armed with a pocket knife open in his hand, make an unjustifiable assault upon the plaintiff and his wife, by which the plaintiff and his wife were greatly intimidated, causing them to become frightened, and causing plaintiff's wife to become very nervous and sick. There are further allegations to the effect that the agent of the plaintiff at the depot at that time was present, and witnessed the assault and wrongful conduct as alleged, inflicted upon the plaintiff and his wife by Allen, or was in a position to see the same, and that no steps were taken by the agent to prevent the assault or the wrongful conduct complained of. Upon trial of the case below, verdict and judgment were in favor of the plaintiff for the sum of $400. We find that the evidence in the record substantially sustains these averments, and the judg-

ment and verdict below are supported by the evidence found in the record.' The court of civil appeals found no error in the proceedings, and affirmed the judgment of the trial court.

"We are of the opinion that the conclusions of that court, in so far as they pertain to the right of recovery by reason of the assault upon, and insulting conduct towards, the wife of the plaintiff, are correct, but do not concur in the proposition that the evidence showed any right of action in the plaintiff on account of the outrage of Allen upon himself personally. The wife, having entered the depot, and a ticket having been procured for her, became a passenger of the defendant company, and the duty devolved upon the company's agent to protect her against assault and insulting conduct on the part of third persons, provided he knew of such misconduct or had reasonable grounds to anticipate it. As to the plaintiff the case is different. He went to the depot merely to assist his wife in taking the train, and with no intention of becoming a passenger himself. He was there by the implied invitation of the company, and was not a trespasser. The railway company owed him the duty which is owed by the owners of property to persons who enter upon it by their invitation and no more. That duty is to use ordinary care to see that the premises are kept in a reasonably safe condition, so that persons entering thereupon by invitation are not injured thereby. Hamilton v. Rwy. Co., 64 Tex. 251, 53 Am. Rep. 756; Rwy. Co. v. Best, 66 Tex. 116, 18 S. W. 224. * * *

"Our conclusion is that, since the plaintiff was not a passenger, the defendant company did not owe him the duty of protection against the injurious acts of third persons, and that, therefore, he was not entitled to recover for the misconduct of Allen towards himself."

As seen from this long quotation, Phillio, who had accompanied his wife to the railway station, was an "invitee," and the railway company owed him ordinary care for his safety. The agent of the railway company saw Allen, a vicious drunken man, curse and abuse Phillio and his wife, sing vulgar songs in their presence, and assault them with a knife, and made no effort to protect them. The wife of Phillio, being a passenger of the railway company, was allowed to recover, but Phillio, being an invitee, and due the same protection as Mrs. Waymire in the case at bar, was not allowed to recover. In the case at bar no one testified that he saw the party place the bomb in the picture theater, no one testified that he knew who placed the bomb in the picture

theater, and some precautions were taken by agents of appellant to safeguard its patrons against injury.

Numerous cases are cited by appellees to the effect that owners of places of amusement have been held liable for assaults on their patrons by third parties, but in each case the danger to the guests was present and known to the owner or his agents. In the case of Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803, 85 Am. St. Rep. 446, the defendant, in that case the Swedish Brethren, conducted a place of amusement for the general public at which they sold intoxicating liquors. The allegations in plaintiff's petition were that the defendant sold intoxicating liquor to one Olson whom they knew to be violent, dangerous, and quarrelsome when he became intoxicated, and permitted Olson, after they had sold him the liquor, and after he had become intoxicated, to go among their guests at their place of amusement and abuse the plaintiff. The allegations were borne out by evidence. Thus it will be seen that the danger to the guests at their place of amusement was brought about by their own act in selling the liquor to Olson and in permitting him, after he had become intoxicated, with full knowledge of his quarrelsome and troublesome nature and dangerous character, to go among their guests and abuse them. In our judgment, the court very properly held that under the state of facts the defendants had failed to use ordinary care for the protection of their invited guests. They, by selling Olson the liquor and permitting him to go into the gathering intoxicated, created the danger for which they had to respond in damages.

The case of Indianapolis Street R. Co. v. Dawson, 31 Ind. App. 605, 68 N. E. 909, we do not think is in point. The plaintiff alleged that the street railway company owned a park in connection with its railway, and in said park it maintained attractions for the public and transported its patrons to and from its park on its street railway. The plaintiff in that case was a negro by the name of Dawson. He alleged that the agents of the street railway permitted him to board one of its cars and transported him to the park at a time when they knew a number of "toughs" had assembled at the park for the purpose of running off all negroes who came, by committing on them acts of violence. He alleged that the agents of the defendant railway company knew of the danger, and failed to warn him; that he did not know of the danger himself;

that he received injuries at the park from the hands of said toughs, and brought suit against the defendant for the damages sustained. The court very properly held that the defendant, by failing to warn the plaintiff of the danger, of which it knew, into which it was taking him, and failing to protect him from same, was guilty of negligence for which Dawson could recover his damages.

The case of Myers v. Kansas City Junior Orpheum Co. (Mo. App.) 73 S.W.(2d) 313, we do not think is in point. In that case the danger to Mrs. Myers was present and known. The agents of the theater were purposely allowing people to crowd against the rope that barred her admission into the theater, while they were awaiting seats, and she, being one of the number crowded against the rope and in delicate state of health, was injured thereby. The danger to Mrs. Myers and the other patrons who were crowded in the theater lobby was present and in full view of the agents of the theater, and they did nothing to lessen the danger, but, on the contrary, continued to sell tickets to other patrons, thereby increasing her danger.

We have considered very carefully the case of Southern Enterprises, Inc., v. Marek, 68 S. W.(2d) 384, 386, by the Court of Civil Appeals at El Paso. The allegations of negligence on the part of the theater were as follows:

"(b) That torpedoes and fireworks were exploded on the occasion in question in the theater auditorium prior to the time of the explosion which injured plaintiff.

"(c) That on the occasion in question, prior to the time of the injuries to plaintiff, the defendant, its agents and employees, had knowledge of the exploding of torpedoes and fireworks in the theater auditorium.

"(d) That the defendant, its agents and employees, after acquiring knowledge of torpedoes and fireworks being exploded in the theater auditorium, permitted the persons who were throwing and exploding the same to continue doing so without interference or admonition."

The court, in passing upon the sufficiency of the allegations, makes the following observation: "Our ruling that the petition states a cause of action also disposes of the assignments complaining of the refusal of a requested instruction to find for defendant, for it is obvious the disorderly conduct in the theater was dangerous, and the evidence shows it continued anywhere from three or four minutes to ten or fifteen minutes before Mrs. Marek

was injured and the defendant made no serious effort to stop it. It is also apparent the agents and representatives of defendant present and charged with the duty of preserving order were fully aware of what was going on."

It will be seen that this was a case where the danger was present, happening in plain view of the agents of the theater, and had been going on in their presence from three to fifteen minutes before Mrs. Marek was injured. And, as stated by the court, the defendant made no serious effort to stop it, and the representatives of defendant were present, charged with the duty of preserving order, and were fully aware of what was going on.

On the trial of the case at bar, Veazey and all the union ex-employees of appellant who were in reach of process testified positively that they did not throw, or cause to be thrown, the bomb which injured Mrs. Waymire, nor did they have any knowledge of the person who threw same.

Viewing this case in the most favorable light from appellee's standpoint, should the appellant, in the exercise of ordinary care for the safety of its patrons, be required to subject each of them to a search for bombs or other deadly missiles before they entered its theater? Or should it be required, in the exercise of ordinary care for the safety of its patrons, to warn each of them before entering the theater that they might be exposed to some unknown danger or to some danger from some unknown person? We do not think so. It is obvious that such a requirement would force the theater to close its doors, and, under our system of government, no person should be required to do this. If, on the other hand, the appellant knew some person was in the theater who was raising a disturbance or was about to commit an assault on its patrons therein, then it seems to us that the agents of the theater would in the exercise of ordinary care be called on to make a reasonable attempt to protect said patrons and oust the disturber. But we cannot come to the conclusion that the appellant and its agents would be required to anticipate that a person unknown, at a time unknown, would commit a crime against it or one of its patrons. To so hold would constitute the appellant an insurer of safety of its patrons.

Entertaining the views expressed in the foregoing, it is our opinion that this case should be reversed and here rendered for appellant, and it is so ordered.