# Richmond

## JAMES A. WHITFIELD, ETC. v. VIRGINIA G. COX.

March 7, 1949.

Record No. 3434.

Present, All the Justices.

The opinion states the case.

*White, Ryan & Holland,* for the plaintiff in error.

*Samuel Goldblatt* and *James G. Martin & Sons,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Mrs. Cox, was struck in the face by an empty pint whiskey bottle, thrown by some unidentified person, while she was attending a wrestling bout staged by the defendant, Whitfield. She brought this suit for the resulting damages and obtained a jury verdict for $1,500, upon which judgment was entered. This writ of error was granted to the defendant, who asserts that the evidence was not sufficient to support the verdict and that the court erred in giving an instruction.

The plaintiff based her right to recover on the alleged negligence of the defendant in failing to protect her from injury while she was a paying invitee at the wrestling matches. These matches were conducted by the defendant in an auditorium leased from the city of Norfolk. The bouts took place in an elevated ring in the center of the auditorium, with reserved seats about the ring, and other seats farther back and in the gallery. There were bright lights over the ring, but the rest of the lights in the auditorium were dim.

On the night in question the plaintiff was in a reserved

end seat at the ringside. With her were her young daughter and son. There were two or three thousand people in the audience. She said there was always a good crowd. She was very familiar with the situation, having previously attended the matches some ten times.

During one of the bouts between a sailor and a wrestler named Coffield, word went around that one of the wrestlers was sticking the other with a pin. There was yelling and a number of sailors appeared to dislike the way Coffield was hurting the sailor, and "it seemed like the whole crowd wanted to get in and fight." A sailor kept threatening to go up and kill Coffield. The plaintiff saw him start up the aisle and, as she explained, to calm herself she was buying a bag of popcorn when she was struck by the bottle.

Plaintiff contends that the defendant failed to use proper care to control the crowd and to prevent the misfortune that befell her. The evidence she offered was to the effect that drinking was allowed to go on among the spectators; that the crowd was profane and boisterous; that the sailor kept threatening to go up and kill the wrestler and was going up to the ring to start a fight, and that the defendant did nothing about it. However, she admitted that the only persons she saw drinking were two middle-aged women in the lobby, who were not rowdy, and she also saw two men drinking in the lobby that night and there were people drinking in the gallery.

As to profane language, she said it always went on at the wrestling matches, and as to the conduct of the crowd, they were usually given to strong enthusiasm. She did not consider the crowd dangerous and the only time she was nervous was when the sailor got up. She "didn't dream that anything terrible could happen," and she made no complaint to the defendant, or his agents, or to the police on duty, one of whom was within 30 or 40 feet of her when she was struck.

For the protection of his patrons, the defendant had secured the passage of a city ordinance prohibiting the sale of soft drinks from bottles and requiring the use of paper

cups. No alcoholic beverages were sold on the premises, and drinking was not permitted. If a patron was detected bringing in whiskey, he was required to check it. The city assigned a detail of policemen to keep order in the auditorium. On this night there were four policemen and one sergeant on duty. A police captain was also present, but not on duty. Traffic officers were assigned to handle the cars and required to go inside afterwards to see that there was no roughness in there. Three were assigned to duty that night and additional ones were there voluntarily, but in uniform, making in all thirteen police officers present that night. The defendant employed five ushers and four ticket takers, who were charged with the duty of keeping order. It was the duty of the officers to keep down drinking and prevent disorder. Three of them testified, and it was agreed that two others in attendance would testify, that there was no more disorder that night than on any other night; that there was usually at these wrestling matches a lot of yelling and booing; that there was no open drinking, no arrests were made, and the plaintiff made no complaint about disorderly conduct. They tried, but were unable, to find out who threw the bottle. Nobody seemed to know even which way it came from.

The only conflict in the evidence is made by the plaintiff's testimony that there was public drinking, which the police officers and defendant said they did not see, and that there was unusual disorder and rowdyism, which the police officers and the defendant denied.

The owner or proprietor of a place of amusement, or entertainment, is not an insurer of the safety of his invitees. His duty is to exercise reasonable care for their safety and protection—such care as would be exercised by an ordinarily careful and prudent person in the same position and circumstances. *Knight* v. *Moore*, 179 Va. 139, 18 S. E. (2d) 266; 52 Am. Jur., Theaters, etc., sec. 47, p. 291, and sec. 52, p. 296; *Carlin* v. *Smith*, 148 Md. 524, 130 A. 340, 44 A. L. R. 193, and note at p. 203; Anno., 98 A. L. R. at p. 557.

The argument of the plaintiff is that the jury had the right to believe that the defendant did not have enough employees to keep order and that those he did have made no attempt to keep order.

Just how many employees he should have had is not suggested. As stated, there were nine of defendant's employees present to keep order; and thirteen members of the police force were on hand charged with that duty. If the police officers present saw no disorder that threatened to become dangerous, it is difficult to understand how more employees would have brought about more protection. Nor is it any clearer what those present failed to do that they should have done. While the plaintiff did testify that the disorder was unusual, and the crowd was tense and threatening, she said, also, that she did not know there was any menace or danger; that she was not nervous until the sailor got up, and that the sailor's going to start a fight "was the only thing I noticed in the way of a commotion there."

A verdict of a jury confirmed by the trial court is entitled to great weight and is not to be disturbed if supported by credible evidence, or if fair-minded men may differ on the inferences to be drawn from the evidence. At the same time, there must be more support than is afforded by speculation or conjecture.

It was not required of the defendant that he search his patrons for objects that might be used to injure plaintiff or other patrons, and the court so instructed the jury. Short of doing that, or having enough employees to watch each patron and prevent one from injuring another, it would seem that the measures taken by the defendant to protect his patrons were all that could reasonably be required.

In *Wiersma* v. *Long Beach*, 41 Cal. App. (2d) 8, 106 P. (2d) 45, the plaintiff had a ringside seat, and in the course of a wrestling bout one of the wrestlers, apparently without provocation, jumped from the ring, ran over to the plaintiff and struck him over the head with a chair. It was held that the proprietor was only required to anticipate reason-

ably probable happenings and to use ordinary care to prevent injury to patrons; that the act complained of could not have been anticipated by the defendant and he should not be held responsible for the resulting damage.

In *Paschall-Texas Theatres* v. *Waymire* (Tex. Civ. App.), 81 S. W. (2d) 767, 772, the plaintiff was injured in a picture theatre by the explosion of a bomb set off by some unidentified person. The picture show operators were on strike. Threats had been made and the manager, in anticipation of some violence, had sought police protection in addition to hiring three guards himself. There was a verdict for the plaintiff, which was reversed and judgment rendered for defendant on the ground that the duty of ordinary care did not require the defendant to search his patrons for bombs or missiles, or to warn them that they might be exposed to danger from some unknown person. The court said the defendant would not be required to anticipate that a person unknown, at a time unknown, would make a criminal assault against it or one of its patrons. "To so hold would constitute the appellant an insurer of safety of its patrons."

In *Hawkins* v. *Maine, etc., Theaters Co.*, 132 Me. 1, 164 A. 628, 629, the defendant advertised a special matinee, and announced that a balloon would be given to each child purchasing a ticket to the balcony. One boy brought along his sling shot and the toy balloons around him made a target too inviting to be overlooked. When the ushers were not looking, he aimed at a balloon and struck the plaintiff in the eye. In refusing to permit a recovery, the court said it was defendant's duty to protect it patrons, not only from dangers of which it had knowledge, but also against those which it should reasonably anticipate; but "it was under no obligation to provide an attendant for every child, or to anticipate the isolated, willful, and sudden act of one boy, the natural tendency of which was to inflict serious harm upon another. There is no evidence that such an incident ever had happened before or that the defendant had any warning whatsoever that it was likely to take

place. It was not a danger which it was bound to have foreseen or to have guarded against." See also, *Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303, 192 N. E. 585.

It is claimed here that there had been other instances of bottle throwing which should have put the defendant on notice and required more precautions than he took. There was some evidence from the defendant, himself, as to one being thrown four or five years before, and another probably a year before, both in a different place, and as to an occasion when somebody was cut on the hand in some undisclosed way some months before the plaintiff was injured. It does not appear that these were circumstances which required more guards than were present, or that more guards would have prevented the incident that happened to the plaintiff.

If it be supposed that the evidence is sufficient to warrant an inference by the jury that the defendant was negligent in failing to have a sufficient number of employees, or in failing to keep proper order during the wrestling matches, it is yet necessary, in order to hold the defendant liable, that such negligence be the proximate cause of the plaintiff's injuries. There must be direct causal connection between the alleged negligence and the injury. *Powell* v. *Virginian Ry. Co.*, 187 Va. 384, 46 S. E. (2d) 429; *Rowell* v. *Wichita*, 162 Kan. 294, 176 P. (2d) 590.

The condition which the plaintiff claims was attributable to defendant's negligence was drinking, disorder, and the act of the sailor in going toward the ring to start a fight. Yet, the misadventure suffered by the plaintiff could have happened if none of those things had existed. There is no evidence as to who threw the bottle, or why it was thrown, or from what direction it came. There is no evidence that the person who threw it was drinking, or excited, or that it was thrown at the sailor or at the plaintiff, or at anybody. It would be only conjecture to say that there was any connection between the conditions existing and the throwing of the bottle. Such things occasionally happen at football, baseball and other games at which crowds gather, with nobody to blame except the irresponsible or malevolent

person who did it. If this defendant had had several times as many employees as he did have, the incident could still have occurred.

In *St. Louis-San Francisco R. Co.* v. *Mills,* 271 U. S. 344, 46 S. Ct. 520, 521, 70 L. Ed. 979, it appears that during a strike an officer had been employed by the defendant to guard decedent and his companion. While they were returning to decedent's home on a street car, they were fired on from a group on the rear platform, and decedent was killed. It was held that it was error to submit to the jury whether the failure to provide more than a single guard was negligence causing decedent's death; that there was no "evidence from which the jury might infer that petitioner's failure to provide an additional guard or guards, was the proximate cause of decedent's death. Whether one or more additional guards would have prevented the killing is in the highest degree speculative."

It is generally recognized, and the plaintiff knew from her prior attendance, that these wrestling matches are not quiet and dignified affairs. She and others who attended them knew the usual behavior of the spectators; that their manner was not always gentle, nor their speech always refined. As was observed by Cardozo, C. J., in *Murphy* v. *Steeplechase Amusement Co.,* 250 N. Y. 479, 166 N. E. 173, 174, in referring to the experience of a plaintiff injured while patronizing a supposed attraction, known as "The Flopper," in an amusement park, "The rough and boisterous joke, the horseplay of the crowd, evokes its own guffaws, but they are not the pleasures of tranquillity. The plaintiff was not seeking a retreat for meditation." *Cf. Thurber* v. *Skouras Theatres Corp.,* 112 N. J. L. 385, 170 A. 863; *Hudson* v. *Kansas City Baseball Club,* 349 Mo. 1215, 164 S. W. (2d) 318, 142 A. L. R. 858.

It was not the duty of the defendant to keep the crowd quiet. The antics of the crowd seemed to be part of the attraction. The plaintiff said she would rather watch the people's faces than the matches. The duty on the defendant was to use reasonable care to protect the plaintiff from

dangers that could reasonably be anticipated. The evidence does not, we think, establish a breach of that duty or any causal connection between such an alleged breach and the plaintiff's injury. It is not necessary, therefore, to consider the instruction which is the subject of the additional assignment.

The judgment complained of is reversed and final judgment for the defendant will be entered.

*Reversed and final judgment.*