**CORPUS CHRISTI SPEEDWAY, Inc.,**
**Appellant,**

v.

**Harlle E. MORTON, Appellee.**

**No. 12846.**

Court of Civil Appeals of Texas.

San Antonio.

May 25, 1955.

Lewright, Dyer, Sorrell & Redford, San Antonio, North, Blackmon & White, Corpus Christi, for appellant.

Joe J. Alsup, Corpus Christi, for appellee.

NORVELL, Justice.

■ This is an appeal from a judgment for $6,125 in favor of Harlie E. Morton and against Corpus Christi Speedway, Inc. The appellant was the operator of an automobile racing track or speedway, and appellee, shortly before he was injured, had been driving a car in a race being staged at the track. Morton's vehicle had been rendered immobile by a collision with another car and he had stepped over the guard rail of the track, with the intention of going either to the pits or the grandstand, when he was struck by an object later identified as a bottle. He thereupon attempted to re-cross the guard rail, with the evident intention of re-entering his stalled automobile for protection, when it was again struck by a racing automobile and Morton's leg pinioned between the guard rail and his car, causing severe personal injuries.

Numerous special issues were submitted to the jury, some were answered favorably to Morton and some otherwise. The findings relied upon to support the judgment were that appellant's action in permitting persons to carry bottles into the grandstand constituted negligence which was a proximate cause of appellee's injuries (Special Issues Nos. 4 and 5).

We have concluded that the judgment must be reversed upon two grounds, first, the cause of action asserted by Morton was conclusively barred by a release executed by him, and, second, there is no evidence supporting the jury's findings upon the negligence and proximate cause issues above set out.

The appellee, Morton, did not enter the track or grandstand as an ordinary spectator. He did not purchase an ordinary admittance ticket, but procured a special ticket or license referred to as a "pit pass." He paid the sum of one dollar, which went into a special fund to be used in paying the medical expenses and hospital bills of any of the contestants who might be injured in the races. Morton, as well as all others who entered the premises primarily as participants upon a "pit pass," executed a form of release which read as follows:

"For and in consideration of the privilege to drive on, work in pits, act in any capacity of an official, or compete for certain cash prizes and other emoluments, the undersigned hereby swears that he or she is of legal age (21 years of age) and has an automobile driver's license, and releases and discharges the Corpus Christi Speedway, Inc., the owners of the racing cars, and the sponsor or sponsors of the various events, from any and all claims, suits and causes of action for any personal injuries, property damage, or claims for wrongful death, whether caused by the negligence of the above or not. The undersigned driver, car owner, sponsors, or participants in any of the events held at the Corpus Christi Speedway do hereby relinquish all rights to any photos taken at the Speedway and give their permission to publish or sell or otherwise dispose of said photographs as the track management so desires."

Appellee construes this release as having application only while he was competing in a race, working in the repair pits or acting in some capacity as an official. While the consideration stated mentions these respective capacities and activities, the release clause in plain and unambiguous language provides that the person executing the same "releases and discharges the Corpus Christi Speedway, Inc., the owners of the racing cars, and the sponsor or sponsors of the various events, *from any and all claims, suits and causes of action for any personal injuries,* property damage, or claims for wrongful death, whether caused by the negligence of the above or not."

The release *as written* absolves appellant of liability for appellee's injuries. How-

ever, it is contended that the release can not be given literal effect because of reasons of public policy. It is seemingly admitted that a release of the nature here involved and applying only to participants in racing contests would be valid, Missouri-Kansas, Texas Ry. Co. of Texas v. Carter, 95 Tex. 461, 68 S.W. 159; Sullivan-Sanford Lumber Co. v. Watson, 106 Tex. 4, 155 S.W. 179; Hartford Fire Ins. Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84; Broderson v. Rainier National Park Co., 187 Wash. 399, 60 P.2d 234; 2 Restatement of the Law of Contracts, §§ 574, 575, but appellee's position is that at the time of his injury, he occupied the status of a spectator and not that of a participant in a racing contest.

Appellee's theory is that after his racing car had collided with another and he had ascertained that it would no longer operate, he decided to leave the track and become a spectator and thereupon and thereafter appellant's duty to him was the same as it was to any other spectator, and that because of public policy consideration, the release was ineffective to bar his claim. Appellee testified that he knew of no reason why anyone in the grandstand would throw a bottle at him, and that, so far as he knew, his actions as a driver in the race were wholly unconnected with the incident.

In our opinion, appellee's intention at the time he left the track to become a spectator or go into the pits or take some other action, is immaterial. The question is not whether appellee ws participating in a race or viewing a race, but rather whether or not, in view of the public policy considerations involved, a valid contractual distinction should be recognized as between appellee and those similarly situated, on the one hand, and the general public, on the other hand. Under the authorities above cited, we believe such distinction is valid and should be upheld. Except for the one dollar contributed to a medical expense fund, appellee paid no admittance charge. He belonged to a class which generally participated in the staging of the races, as the driver of an automobile, or as a mechanic or helper in the pits. The release sought to make a distinction between this class and those who were admitted as spectators. Appellee was not an employee of appellant, but primarily a contestant in races held by it. He belonged to a definite class where risks of injury were much higher than were the risks of the ordinary spectator. A special contract relating to the class to which appellee belonged was not violative of public policy. 2 Restatement of the Law of Contracts, §§ 574, 575. The fact that at the precise time of injury, appellee was not participating in a race or had terminated his participation is deemed immaterial. He had gained admittance as a member of a class intending to participate and the special contract limiting liability was binding upon him. The trial court should have instructed the jury to return a verdict for appellant upon the ground that appellee's action was barred by the release signed by him.

In the event appellee be considered as occupying the status of an ordinary spectator, we are of the opinion that the evidence falls short of showing that appellant was guilty of actionable negligence in selling beer and other beverages in glass bottles. The promoter of a theatrical performance, athletic exhibition or racing contest, who also purveys beer or other beverages, is ordinarily not liable to a patron injured as a result of being struck by a container bottle. No doubt there are contests and exhibitions where injury might well be anticipated by allowing patrons to purchase beverages in bottles and allowing them to take such glass containers with them to grandstands or other places where seats are provided. Delivery of beverages in paper containers only is not an uncommon practice, Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72, but in the absence of a statute, the question of whether or not an operator should be held accountable for the failure to take such or like precautions is essentially a question of fact, hence evidence must be produced to show that danger of injury should have been

reasonably anticipated as a result of the delivery of beverages in glass containers. Anticipation of consequences is a necessary element in determining both the questions of actionable negligence and proximate cause. Texas & Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; City of Dallas v. Maxwell, Tex.Com.App., 248 S.W. 667, 27 A.L.R. 927; Kimbriel Produce Co. v. Mayo, Tex.Civ.App., 180 S.W.2d 504.

The statement of facts in the present case discloses some general testimony that "disturbances" sometimes occurred at the track during the heat and excitement of the automobile races; that occasionally a police officer would remove a patron from the premises, and that a few fights between the drivers of racing cars had taken place in the pits. There is some intimation that these fights were "part of the game," and had for their purpose the increasing of partisan interest among the spectators. However, although it appears that the track had been in operation some three years prior to appellee's injury, there was no evidence of a general fight or altercation having broken out among the spectators upon any occasion, nor was there evidence that any one had been hit with a bottle or that one had ever been thrown prior to the incident giving rise to this lawsuit.

The case of Southern Enterprises, Inc., of Texas, v. Marek, Tex.Civ.App., 68 S.W.2d 384, 385, reversed 128 Tex. 377, 99 S.W.2d 594, is the sole authority cited in support of the contention that appellant is liable under the facts disclosed by the record before us. As we understand the case, it holds that a theatre owner may be held liable when he knows or should have known of the misconduct of persons within the theatre who were exploding firecrackers and does nothing to terminate such dangerous behavior before it results in injury to a theatre patron. In the present case, the throwing of the bottle is largely unexplained. No prior altercation or difficulty was shown. Apparently no quarrel or dispute was going on, and no bottles or other objects had been thrown, when suddenly and without warning, some unidentified person threw a bottle from the grandstand. With reference to a similar situation, the Supreme Court of Virginia, in Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72, 75, said:

"There is no evidence as to who threw the bottle, or why it was thrown, or from what direction it came. There is no evidence that the person who threw it was drinking, or excited, or that it was thrown at the sailor or at the plaintiff, or at anybody. It would be only conjecture to say that there was any connection between the conditions existing and the throwing of the bottle. Such things occasionally happen at football, baseball and other games at which crowds gather, with nobody to blame except the irresponsible or malevolent person who did it.
* * *

"As was observed by Cardozo, C. J., in Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 166 N.E. 173, 174, in referring to the experience of a plaintiff injured while patronizing a supposed attraction, known as 'The Flopper,' in an amusement park, 'The rough and boisterous joke, the horseplay of the crowd, evokes its own guffaws, but they are not the pleasures of tranquility. The plaintiff was not seeking a retreat for meditation.' Cf. Thurber v. Skouras Theatres Corp., 112 N.J. L. 385, 170 A. 863; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 164 S.W.2d 318, 142 A.L.R. 858.

"It was not the duty of the defendant to keep the crowd quiet. The antics of the crowd seemed to be part of the attraction. The plaintiff said she would rather watch the people's faces than the matches. The duty on the defendant was to use reasonable care to protect the plaintiff from dangers that could reasonably be anticipated. The evidence does not, we think, establish a breach of that duty or any causal connection between such an alleged breach and the plaintiff's injury."

The court erred in overruling appellant's motion to disregard the jury's answers to

the negligence and proximate cause issues above discussed. Carey v. Pure Oil Distributing Corp., 133 Tex. 31, 124 S.W.2d 847; Circle Theatre, Inc., v. Grant, Tex. Civ.App., 32 S.W.2d 676; Bruner v. Seelbach Hotel Co., 133 Ky. 41, 117 S.W. 373; Paschall-Texas Theatres v. Waymire, Tex. Civ.App., 81 S.W.2d 767.

For the reasons stated, the judgment of the trial court is reversed and judgment here rendered that appellee take nothing. Rule 434, Texas Rules of Civil Procedure.

Reversed and rendered.