Kenneth C. MERRIMAN, Respondent,

v.

BEN GUTMAN TRUCK SERVICE, INCORPORATED, and Liberty Mutual Insurance Company, and Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Appellants.

No. 50993.

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Quinn & Quinn, William B. Quinn, Julia M. Quinn, St. Louis, for respondent.

Edw. C. Friedewald, St. Louis, for other appellants.

Norman H. Anderson, Atty. Gen. of Missouri, Irving L. Cooper, Sp. Asst. Atty. Gen., Clayton, for appellant, Treasurer of State of Missouri, as Custodian of Second Injury Fund.

HIGGINS, Commissioner.

Appeal by employer, insurer, and custodian of Second Injury Fund from a judgment of the circuit court reversing a final award of the Industrial Commission, which award denied compensation. Appellant custodian is a state officer and we have jurisdiction. Art. V, § 3, Mo.Const., V.A.M.S.; Mossman v. St. Joseph Lead Co., Mo.App., 254 S.W.2d 241; Grant v. Neal, Mo., 381 S.W. 2d 838.

On July 6, 1962, respondent was 29 years old, 6 feet tall, weighed around 195 pounds, and had been a truck driver for about six years. He had gone to work for Ben Gutman Truck Service, Incorporated, around the middle of June, 1962, from previous employment of five years with Marine Petroleum Company. His job consisted of driving trucks and making local delivery of freight. His truck or trailer would be loaded overnight and each morning he would receive delivery tickets which showed where and what he was to deliver. Upon arrival at a delivery point he moved the freight from the forward part of the truck to the tail gate where it was taken off by employees at the place of delivery.

On July 6, 1962, respondent arrived for work at 8:30 a.m. and started making his deliveries. He made a couple of deliveries on Hall Street and then arrived at Wilson Truck Line around 11 a.m. The shipment to be delivered at Wilson was in the front of the trailer and consisted of several pieces. He had to move a round coil of rope to get to the boxes and containers. The rope had fallen over on the Wilson shipment because the load had shifted from its original placement. In the words of respondent, " * * * the freight usually when they take off, it is stacked; when you make a couple stops, well it shifts, if it is not tied, it shifts, that is what happened. This coil of rope lying on top of the containers I had to take out and I had to step over these other boxes in order to get to this rope to throw it over out of my way so I stepped one foot forward, my right foot forward, stepped up on another container and when I reached down to get the coil of rope, * * * three feet, three and a half feet in diameter, about twelve, fourteen inches thick, just a coil of rope wrapped in some kind of wrapper. * * * it weighed around one hundred pounds or one hundred ten. * * * It wasn't very high because the freight it was in more or less flat boxes, I would say about sixteen or eighteen inches off the floor lying close to the floor on some stuff I had to get. * * * the coil of rope was up here in front of some more freight laying where it had fallen off of something on the freight I was supposed to leave at Wilson. I had to move it off and that's why I had to leave one foot there and step over there to get ahold of it; you are not supposed to walk on those containers." The rope was two and a half to three feet in front of where he was standing, and he described his movements as: " * * * I stood with one foot on the floor of the trailer and I put my right foot on a container which was in front of me and bent forward down, in order to get to the coil of rope." His right foot was approximately sixteen to eighteen inches off the floor of the trailer, and his feet were apart "two and a half feet, I was stretched out, lying forward. * * * Bending forward, way forward. * * * I didn't want

to stand, walk on the other small cartons, that is not a good policy, you might bust them and so I tried to keep off of them, keeping one foot down and one on a solid like carton, and to reach the coil of rope too. I tried to lift it on to its edge or either roll it out of the way, anywhere to get it off my carton I had to get out. * * * That is when something happened in my back. * * * I lifted it, I guess, approximately six inches, and then I had to drop it back." He had lifted as much weight before but the difference on this occasion was "I was lifting all with my shoulders and arms and my hips and back was completely behind me * * *." As he went through the described motions and function of lifting the rope he experienced "a sharp burning pain right in the small of my back." At another point in his testimony respondent described his motions and function as: "I had to lift the coil of rope, I had to clear it to get it on to its edge to roll it out of the way of the freight that I was going to unload at Wilson Truck Line, I had to lift it to turn it to get it out of the way, because, as I thought I brought out clear before, the freight had shuffled and fallen in the trailer and I reached over to lift it to clear it, to get it on its edge * * *. I had to hold on all the time or it would have fallen back to where it was to begin with.

"Q. You were lifting it and twisting it? A. That is right. * * * Q. And you were trying to lift one end of it up? A. I was trying to clear it so I could * * * Just like if this was one on here, you have to get it up over the edge to roll it out of there and had to hold on to it and lift it and try to turn it all at the same time, which I didn't do right then. * * *

"Q. * * * what, if any, degree of effort did you have to extend to attempt to accomplish that motion or function? A. I guess, all I would say all the strength I had." He sat down and remained lying on his side for two or three minutes. He later removed the rope by getting on his hands and knees. He completed his day's work

with his back hurting. This was on Friday and his next work was Monday. He made no report because he thought it might cost him his job. He came back to work Monday but was not able to work. He was sent to a doctor from whom he received heat treatment. He went back to Marine Petroleum two weeks later. The only lifting he had to do there was of a five pound unloading hose.

William A. Stevens, M.D., examined respondent on September 27, 1962, October 8, 1962, December 13, 1962, and September 6, 1963. In addition to respondent's complaints, he found that respondent's right leg was one-quarter inch shorter than the left. He was of the opinion that respondent sustained a permanent and progressive soft tissue injury and strain of the lower back in the region of the lumbosacral joint as a result of the incident of July 6, 1962, and that he had right lower leg symptoms as a result of an old degenerative condition of his right hip joint. He testified also that respondent's type of back is "vulnerable even to minor trauma, twist, lifting in a twisted position or unguarded movements that produce a severe back condition."

Jack C. Tippett, M.D., examined respondent on behalf of appellants on August 28, 1963. Dr. Tippett gave respondent a disability rating of ten to fifteen per cent to the man as a whole by reason of the low back strain and pain condition of which respondent complained. Upon learning of respondent's hip condition the doctor was unable to separate it from the back condition but his rating was on the low back strain.

Respondent's claim was that he sustained accidental injury in the form of an abnormal and unusual lift, and that by reason of pre-existing congenital deformity of his right hip, he had combined disabilities greater than from the last injury alone and was therefore entitled to make claim against the Second Injury Fund.

Under these circumstances the referee made an award of compensation to respondent which was reversed by the Industrial

Commission because "We find from all of the evidence that the employee, Kenneth C. Merriman, did not sustain an accident on or about July 6, 1962, within the meaning of the Missouri Workmen's Compensation Law. The employee contends that he sustained an accident in the form of an abnormal or unusual strain within the meaning of Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401, and other cases dealing with the subject. A careful review of those cases and the facts in the instant case, convinces us that he has failed to prove that he sustained an abnormal or unusual strain. We believe that the evidence fails to demonstrate the occurrence of any unforeseen or unexpected event (other than the injury itself) which happened suddenly and violently. So far as we are aware, the strain cases do not dispense with this statutory element." Commissioner Cates dissented, saying that the award "disregards the evidence that the employee was in the act of lifting and twisting a large, heavy, bulky and cumbersome coil of rope and that in doing so he had assumed a position with his body that placed him completely out of normal position, and when he was in this abnormal position he was exerting all the strength he had to move the rope. Such being the case, with his body in the abnormal, awkward position because he was attempting to avoid stepping on the small cartons, he was subjected to an unusual and abnormal strain."

Upon appeal from the Industrial Commission the circuit court in a memorandum opinion reversed the award and ordered it remanded for further proceedings. The opinion of the circuit court was that "the Commission based its award on a mis-conception of the law * * *. The uncontradicted evidence * * * demonstrates that the claimant placed himself in an awkward, unusual and extended position in which he attempted to lift a heavy coil of rope and in so doing experienced a sharp, burning pain in his back. The situation involves an unusual or abnormal strain within the meaning of the three cases cited

* * *. The Industrial Commission has misconstrued the law and since its erroneous ruling is on a matter of law, it becomes our duty to reverse * * *."

It is appellants' contention that the circuit court erred in reversing the award of the Industrial Commission because there was sufficient competent evidence to support the facts found, and award made, by the commission. Respondent contends that an award which denies compensation on the sole ground that the employee did not sustain injury because he did not prove an abnormal or unusual strain is an interpretation or application of law and is reviewable as a conclusion of law when there is no conflict in, or expression of disbelief of, the evidence and testimony of the employee, the rules of deference to the commission being inapplicable in such situation.

We are mindful of the general rules that as to fact questions the reviewing court does not substitute its judgment for that of the commission; that such an award is to be set aside only when not supported by substantial evidence or when clearly contrary to the overwhelming weight of the evidence; that such evidence, including all reasonable legitimate inferences, will be viewed in a light most favorable to the award; that the commission could judge the credibility of the witnesses; and that burden of proof is on claimant to prove his claim. Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 161 A.L.R. 1454; Powers v. Universal Atlas Cement Co., Mo.App., 261 S.W.2d 512; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Brown v. Anthony Mfg. Co., Mo., 311 S.W.2d 23; Greer v. Missouri State Highway Dept., Mo.App., 362 S.W.2d 773; Thacker v. Massman Const. Co., Mo., 247 S.W.2d 623; Smith v. Smith, Mo., 237 S.W.2d 84; Diebold v. Great Atlantic & Pacific Tea Co., Mo.App., 241 S.W.2d 31; Long v. Mississippi Lime Co. of Mo., Mo.App., 257 S.W.2d 167; Miller v. Ralston Purina Co., 341 Mo. 811, 109 S.W.2d 866. We are mindful also that

awards of the commission "which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction. [Cases cited.] And where the finding of ultimate fact is reached by the application of rules of law instead of by a process of natural reasoning from the facts alone, it is a conclusion of law and subject to our reversal. [Cases cited.]" Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65 [4, 5].

◼ Reference to the award of the commission shows that it was not made upon a ground of lack of credibility of claimant or his doctor, and neither was contradicted or impeached. There is no conflict in the evidence and the evidence as to accident and injury is undisputed and uncontradicted. There is no suggestion that any of the testimony was contrary to physical fact. In such situation the commission may not arbitrarily disregard and ignore such testimony and evidence and substitute therefor their personal opinion unsupported by sufficient competent evidence, Lunn v. Columbian Steel Tank Co., Mo.App., 275 S.W.2d 298, 301 [4]; Corp. v. Joplin Cement Co., Mo., 337 S.W.2d 252, 258 [6]; and Smith v. General Motors Corp., Mo., 189 S.W.2d 259, 264 [7], Finerson v. Century Electric Co., Mo., 227 S.W.2d 740, 742 [1], and Scott v. Wheelock Bros., 357 Mo. 480, 209 S.W.2d 149, 152 [4], which sustain commission findings of ultimate facts as sufficient in absence of request for further findings, are not in point.

◼ We find no dispute in the evidence here, and "(w)here the evidentiary facts are not disputed, the award that should be entered by the Industrial Commission becomes a question of law and the Commission's conclusions are not binding on the appellate court." Corp v. Joplin Cement Co., supra, 337 S.W.2d l. c. 258 [7].

The precise question here is whether respondent's situation is an accident as defined in Section 287.020(2) RSMo 1959, V.A. M.S., "The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

◼ Recent decisions have clarified this definition where a lifting injury is involved. In Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401, the claimant was assisting in adjusting an elevator on a corn picker and undertook to support a part of it which came down on him heavier than expected. We held that "where an employee's injury is the result of an unusual or abnormal strain arising out of and in the course of his employment, the injury is compensable. An abnormal strain may, therefore, be classified as an accident even though not preceded or accompanied by a slip or a fall." 307 S.W.2d l. c. 405 [1, 2]. Previous cases holding to the contrary were overruled. In Williams v. Anderson Air Activities, supra, claimant was engaged in installing kitchen equipment and got under a table to raise it by resting it on his back and, raising himself on his toes, gave an "extra surge of power" and hurt his back. The court applied the rule of Crow v. Missouri Implement Tractor Co., supra, and held that: "Our interpretation of the Crow case, when it is placed alongside the Blair case [State [ex rel. United Transports, Inc.] v. Blair, [352] Mo. [1091], 180 S.W.2d 737], is that where an employee suffers an unexpected and abnormal strain (at least while he is engaged in doing something beyond and different from his normal routine) and, as a result thereof, sustains an injury which is not the result of orderly natural causes, the injury is an accident within the meaning of sec. 287.020(2). The abnormal strain is the event and the injury is the result. The unexpectedness lies in the fact that force produces more strain than the employee has contemplated. This is true even though the force which caused the abnormal strain comes entirely from the physical exertion rather than from sources external

**298**

to the body." 319 S.W.2d l. c. 65 [1]. In Brotherton v. International Shoe Co., Mo. App., 360 S.W.2d 108, claimant was attempting to unlock a perforating machine using a long pipe wrench with a pipe over the handle. He bounced up and down in his effort; his foot slipped and he hurt his back. The court reviewed Crow v. Missouri Implement Tractor Co., supra, and Williams v. Anderson Air Activities, supra, and concluded that the claimant's abnormal and unusual strain was sufficient to constitute a compensable accident and reversed the Commission.

■ Under these authorities and the undisputed evidence respondent was required to assume an extended position with his body which placed him completely out of a normal, usual or routine lifting position, i. e., his lift of a heavy, cumbersome coil of rope was with his shoulders and arms only, his back and legs being to the rear of his lifting center instead of in support of it. While exerting his full force in that position, he experienced a sudden, sharp, burning pain or sensation in the small of his back which resulted in disability in his back. (The commission's finding acknowledged injury.) The strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident within the meaning of Section 287.020(2), supra. For these same reasons, this case is not a case of disability overtaking the claimant while at work as did the claimants' heart conditions in State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40, and De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834; nor is it like a case of pneumonia resulting from exposure in the ordinary course of work as in Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S.W.2d 918; and it is not like the case of usual work in righting a barrel of oil in the same manner as on many other occasions as in Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W.2d 257.

Accordingly, the judgment of the circuit court reversing and remanding this case to the commission for further proceedings is affirmed, and the cause is remanded to the circuit court to effectuate the judgment.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.