Hans GOLD, a Minor, by Edie Gold, his Next Friend, Appellant,

v.

Marvin S. HEATH, Anne C. Heath, Marvin S. Heath, Executor of the Estate of Marcus S. Heath, Deceased, and Marvin S. Heath, Executor of the Estate of Flossie Mae Heath, Deceased, Respondents.

No. 50913.

Supreme Court of Missouri, Division No. 1.

July 12, 1965.

Harold J. Maddox, Alder & Morrison, Kansas City, for plaintiff-appellant.

Henry G. Eager, Donald H. Loudon, Kansas City, William E. Turnage, Liberty, Swanson, Midgley, Jones, Blackmar & Eager, Kansas City, of counsel, for respondents.

HIGGINS, Commissioner.

Action for $25,000 for personal injuries. The trial court sustained defendants' motion for directed verdict at the close of plaintiff's evidence and entered judgment for defendants. Plaintiff has appealed.

Plaintiff alleged in his petition that on June 13, 1963, he was an invitee of defendants at their Hillcrest Drive-In Theater in Clay County, Missouri, where he was further invited to play on a playground provided there by defendants; that while playing he was struck in the right eye by a rock thrown by a third person and injury resulted. He charged in paragraph 4 that defendants were careless and negligent:

"(a) In * * * failing to provide a safe place for this Plaintiff to play in;

"(b) In * * * failing to supervise the activities of their business invitees on said playground, or in the alternative in * * * failing to properly supervise the activities of their business invitees on said playground;

"(c) In * * * failing to exercise ordinary care for the safety of this Plaintiff

"(a) in that the Defendants knew or should have known * * * that children pick up rocks and throw them at each other and otherwise

"(b) the Defendants * * * could and should have foreseen that a child would pick up and throw a rock at this Plaintiff and injure him;

"(c) the Defendants knew or should have known that the presence of an attendant or attendants would have prevented the Plaintiff from having been injured."

Defendants' pleading was a general denial.

Mrs. Harold J. (Marjorie) Maddox testified that on the evening of June 13, 1963, she and her husband, Harold J. Maddox (attorney for plaintiff), took their children and plaintiff, a neighbor boy, to the Hillcrest Drive-In Theater to see the motion pictures, "Son of Flubber" and "Hatari." The Maddox children were Randy, 13, Craig, 11, a 7–year-old girl, and a baby; plaintiff was a friend and contemporary of Craig Maddox. Upon arrival at the theater plaintiff and Craig left the car and were next seen at the intermission between "Son of Flubber" and "Hatari" when they came to the car to get money for refreshments. Later, during the showing of "Hatari," Craig ran back to the car to report that Hans had been hit by a rock. Mr. and Mrs. Maddox left their car and went to the concession stand where a man was "trying to help Hans—doing what he could for him. And I went in the restroom and got a tissue and wet it, and came back out and took over, and he left." The entire party left immediately for home and, upon arrival there, she put Merthiolate and a Band-Aid on the cut. The next day she and Hans' mother took Hans to a doctor who hospitalized Hans. She did not know of any previous trouble, the boys said nothing about any fights, and no report was made of Hans' injury.

Plaintiff testified that when the showing of "Hatari" started he and Craig watched a little of it from the patio and then went to the playground to watch it from there. They sat on the slide and, after watching for awhile, went to the merry-go-round. There were no theater employees there. Two other boys were playing on the swings nearby. "When we almost slowed down, one boy on the swing threw a rock, right here on my eye." He ran to the concession stand and a man came up who took him into the bathroom and tried to stop the bleeding with a tissue. On cross-examination he testified that there was no disagreement or fight with either of the boys; that there was no reason for anybody to throw a rock and that he did not know they were going to throw a rock. He did not see the rock thrown and did not see the rock that hit him. He had never seen anybody throw rocks at the playground before and neither he nor Craig had ever thrown any. He knew only what Craig told him about the incident.

Mr. and Mrs. Hans Guenther Gold, parents of plaintiff, testified to plaintiff's complaint of eye injury and hospitalization. Mr. Gold also stated that he had been to the playground two or three times before

and two times after the incident, and that he had never seen anything dangerous there.

Defendant Marvin S. Heath, called by plaintiff, testified that he, his wife, and his father and mother owned the Hillcrest Drive-In Theater and that he was appointed manager by his partners. (Flossie Heath died prior to trial and Marcus S. Heath died following the trial.) The theater was opened June 4, 1954. A playground was opened two or three years later when two teeter-totters and a swing were installed in a 30′ × 40′ area. A new playground, 100′ × 70′, equipped with a jungle gym, two sets of swings, slide, teeter-totters, and merry-go-round, was put in use around Memorial Day, 1963. It was located behind the concession stand and was surfaced with "crusher-run chat, with a lot of dust. Possibly there could have been three-quarter inch pieces in it."

In the summer months as many as 20 or 21 people would be employed at the theater; one of them, Mrs. Frances Homan, managed the theater in his absence, and she was in charge on June 13, 1963. As of June 13, 1963, other employees would have included George Lucas, Danny Homan, Frances Homan, Jerry Richards, Richard Izatt, Bernard Buckley, Mrs. Ralph Sutton, and Ralph Sutton, Jr., and all had protection of patrons and supervision of the playground as part of their duties. He admitted to a possibility that children might pick up rocks, but had never seen a child throw one and did not know of any being thrown on the playground prior to June 13, 1963. He said that he heard Buckley state in giving a deposition that Buckley had heard of children throwing rocks at or rolling them down the slide.

Children were permitted to play on the playground as long as they behaved. If they misbehaved they were sent back to their cars. "Older and bigger" children were not allowed on the playground. The playground was lighted by floodlights and by light from the snack bar. The playground was located as it was with the assistance of The Miracle Equipment Company to provide the most in supervision with certain employees having specific duties of supervising the playground in addition to other duties. The first notice anyone had of this incident was the service in connection with the filing of the suit sometime after the occurrence.

Craig Allen Maddox testified that there were no employees on the playground when he and Hans were on the slide just before Hans was struck. Hans was struck by a rock thrown by another boy. He and Hans were then riding the merry-go-round and two other boys were present. There had been no fights, arguments, or words between the boys. He said he saw the boy who threw the rock when Hans was being helped by a man at the restroom. He tried to hold the boy but his mother came and took him away. He did not know the boy. On cross-examination he stated that only one rock was thrown and that the boy just "pulled back" and threw it. The thrower was on the swings several feet away from the merry-go-round. He had never seen anyone else throw a rock on the playground; he and Hans threw no rocks, and there were no fights or disputes there, although Hans had been chased by another boy at intermission for going in front of him at the slide.

Frances Lucille Homan testified that she managed the snack bar and acted as theater manager when Mr. Heath was not there, as was the case June 13, 1963. Prior (23 years before) to June 13, 1963, one of her sons hit another of her sons with a rock. She was standing ten feet away, saw him pick up the rock and throw it, and could not stop him. She stated that her son Danny and Mr. Williams were assigned most of the duty of watching the playground. No one reported any incident of injury to her on June 13, 1963. She had never seen any other children throw rocks at each other.

Danny Homan testified that he had duties of watching the playground and keeping

order there and that he would attempt to prevent it if he saw a boy about to throw a rock at another. He had seen boys and girls throw rocks up into the projection beams on the other side of the snack bar from the playground, but had not seen any rocks thrown at another child. If he saw a boy reach down to pick up a rock he would tell him to put it down. He would not be able to stop a rock from being thrown unless he was "right on top of him."

Harold J. Richard, another employee, testified that he was generally aware that children sometimes threw rocks. He did not recall whether he was at the theater June 13, 1963, and did not recall any of the incidents related by Hans and Craig. On cross-examination he stated that he had never observed any rock throwing anywhere on the theater premises.

Ralph Lee Sutton also had duties involving supervision of the playground, and he had seen children throw rocks at the exit signs and up into the lights but had not seen any rocks thrown at children there. If he saw any rock throwing, he would try to stop it.

Appellant says the court erred in sustaining the motion for directed verdict because:

"1. There was substantial evidence of prior notice * * * of the type of conduct * * * from which the defendants could have reasonably anticipated and foreseen * * * injury to * * * plaintiff.

"2. There was substantial evidence of negligence on the part of defendants * * * (which) was the proximate cause of plaintiff's injuries."

Respondents counter this charge and say the court was correct "because (they), in the absence of any warning or prior altercation, could not reasonably foresee that, with no apparent reason, this boy would wilfully throw a rock at the appellant, nor would the presence of an additional attendant have prevented this brief and isolated occurrence."

In ruling the propriety of the directed verdict, we must determine whether a submissible case was made on the grounds asserted by plaintiff and, in making such determination, evidence favorable to defendants is disregarded and only the evidence favorable to plaintiff, and the reasonable inferences therefrom, will be considered. Reimers v. Frank B. Connet Lumber Co., Mo., 271 S.W.2d 46, 47[1]; Pride v. Lamberg, Mo., 366 S.W.2d 441, 443[1]. The case is not to be submitted, however, unless all facts essential to liability are predicated upon legal and substantial evidence. Probst v. Seyer, Mo., 353 S.W.2d 798, 802[1].

In Missouri the owner of a motion picture theater or place of public amusement must exercise ordinary or reasonable care for the safety of patrons, and liability to patrons is predicated on the owner's timely notice or prior knowledge of likely danger to them. In Dickinson v. Eden Theatre Co., 360 Mo. 941, 231 S.W.2d 609, 610[1], we said: "The proprietor of a place of public amusement is not an insurer of the safety of his patrons or invitees, the care required of him being 'that which is reasonably adapted to the character of the exhibitions given, the amusements offered, the places to which patrons resort, and also, in some cases, the customary conduct of spectators of such exhibitions. It is a care commensurate with the particular conditions and circumstances involved in the given case.' Berberet v. Electric Park Amusement Co., 319 Mo. 275, 3 S.W.2d 1025, 1029, 61 A.L.R. 1269; Hudson v. Kansas City Baseball Club, 349 Mo. 1215, 1220, 164 S.W.2d 318, 320, 142 A.L.R. 858; Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 999, 224 S.W.2d 989, 993–994." See also Oakley v. Richards, Mo., 204 S.W. 505[1]; and, as to the added vigilance and caution necessary where children are concerned, see Bronson v. Kansas City, Mo.App., 323 S.W.2d 526, 531[7].

We are mindful also that what amounts to ordinary care depends upon the particular circumstances and is generally a question for the jury unless the evidence is such that reasonable men could not infer negligence therefrom, Miller v. Sabinske, Mo.App., 322 S.W.2d 941, 946 [4], and that a cause may not be withdrawn from the jury unless the facts and the reasonable inferences which may be drawn are so strongly against plaintiff as to leave no room for reasonable minds to differ. Antweiler v. Prudential Ins. Co. of America, Mo.App., 290 S.W.2d 652, 653[2].

Appellant says that Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, is "somewhat controlling." There, plaintiff was injured while crossing the playing field at Sportsman's Park in St. Louis. When the ball game ended she entered the playing field by a left field gate, intending to cross to a Grand Avenue gate in the right field corner. She was caused to fall to the ground and to break her shoulder when run into by a boy who was one of a group of eight or ten engaged in wrestling and pushing each other. These boys were regularly admitted to the park near the end of each game to collect seat cushions. A submissible case was held to have been made because defendant's manager had previously observed similar and usual activities of that particular group of boys on several occasions and had found it necessary to warn the boys and to break up such activities due to the likelihood of injury to patrons.

Appellant also relies on Pfeifer v. Standard Gateway Theater, 259 Wis. 333, 48 N.W.2d 505. There, an 11-year-old plaintiff went to defendant's theater on Sunday afternoon. Five older boys were throwing popcorn boxes and shooting paper wads by means of rubber bands. This had gone on for some time prior to plaintiff's arrival at the theater. Sometime during the show he was struck and injured in his eye. The court, in reversing a directed verdict, said "[T]here was evidence as to how long the conduct of the boys had continued, that such conduct should have attracted the attention of the attendants if there were attendants present, and that the attendants might, in the exercise of reasonable care, have so controlled the behaviour of the boys as to have prevented injury to the other patrons of the theater." 48 N.W.2d l. c. 507[3].

In respect to defendants' duty to foresee, appellant cites Emery v. Thompson, Mo., 148 S.W.2d 479, 480[3]: "Most duties, imposed by the law of torts, arise out of circumstances and are based on 'foreseeability' or reasonable anticipation that harm or injury is a likely result of acts or omissions," and Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 474[14]: "The question is not whether the particular injury under consideration should have been anticipated, but whether, after the occurrence, such injury then appeared to have been the reasonable and probable consequence of the negligent act or omission. And, it is immaterial that the precise manner in which the injury occurred was neither foreseen nor foreseeable."

In Hughes v. St. Louis Nat. League Baseball Club, supra, defendant argued that the activities of the boys were so spontaneous and sudden that there was not time to warn plaintiff. A similar contention is made here, i. e., that plaintiff's injury was a brief and isolated occurrence rather than a situation which flowed from acts constituting prior notice and knowledge. In rejecting the defense contention in Hughes v. St. Louis Nat. League Baseball Club, supra, the court drew a distinction which supports the defendants in our case, saying: "Defendant cites cases, such as Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72, and Hawkins v. Maine & New Hampshire Theater Co., 132 Me. 1, 164 A. 628. However, these cases are not in point because they involve isolated, sudden acts of one person." 224 S.W.2d l. c. 994[9, 10]. In Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72, plaintiff was struck by a bottle thrown by an un-

identified person while plaintiff was attending a wrestling bout staged by defendant. There was evidence from the defendant himself as to a bottle being thrown four or five years before, and another probably a year before, both in a different place, and as to an occasion when someone was cut on the hand in some undisclosed way. The court found that such circumstances did not require more guards and that the presence of more guards would not have prevented the incident. " * * * [T]he misadventure suffered by the plaintiff could have happened if none of those things had existed. There is no evidence as to who threw the bottle, or why it was thrown. or from what direction it came. There is no evidence that the person who threw it was drinking, or excited, or that it was thrown at the sailor or at the plaintiff, or at anybody. It would be only conjecture to say that there was any connection between the conditions existing and the throwing of the bottle. Such things occasionally happen at football, baseball and other games at which crowds gather, with nobody to blame except the irresponsible or malevolent person who did it. If this defendant had had several times as many employees as he did have, the incident could still have occurred." 52 S.E.2d l. c. 75[5]. And, in Hawkins v. Maine & New Hampshire Theater Co., 132 Me. 1, 164 A. 628, plaintiff alleged that defendant failed to restrain "playful, sportive and mischievous acts" of other children in the theater by failing to provide sufficient ushers and attendants. Defendant gave all children balloons, and plaintiff was injured when another child shot at the balloons with a BB gun. In ruling for defendant, the court said, " * * * It (the management) was under no obligation to provide an attendant for every child, or to anticipate the isolated, willful, and sudden act of one boy, the natural tendency of which was to inflict serious harm upon another. There is no evidence that such an incident ever had happened before or that the defendant had any warning whatsoever that it was likely

to take place. It was not a danger which it was bound to have foreseen or to have guarded against." 164 A. l. c. 629[6]. See also Reay v. Reorganization Inv. Co., Mo. App., 224 S.W.2d 580, in which the court distinguished that case from Murphy v. Winter Garden & Ice Co., Mo.App., 280 S.W. 444, saying: " * * * [I]n Murphy v. Winter Garden & Ice Company boisterous and rowdylike acts were noticeably being committed by the two young men for some time before the plaintiff was hurt by them, while in the case under consideration the evidence falls short of proving any act which was likely to cause harm to other patrons of the rink by the boy who struck the plaintiff. * * * There is no evidence that the unknown boy's conduct was in any way dangerous to other skaters prior to his collision with the plaintiff." 224 S.W.2d l. c. 582.

◼ Pfeifer v. Standard Gateway Theater, supra, also may be distinguished from the present case, in which there is no evidence that the boys involved were engaging in unruly or dangerous conduct on the playground, or that there was anything which should have attracted the attention of anyone, or that anyone seeing the boys would have cause for alarm, or that anyone seeing the unknown boy about to throw a rock could have stopped him before he "let fly."

In Dickinson v. Eden Theatre Co., supra, the plaintiff was injured in a collision between herself and a newspaper vendor in the lobby of the theater while waiting for her ticket. It was shown that the vendor had been permitted to station himself there for several years, moving in and out of the crowd to sell his papers, and that on at least one occasion prior to the incident, the vendor had "bumped" a patron. The court said of that situation: " * * * [I]t cannot be said that there was anything inherently dangerous in the customary conduct and activity of Dieckhorner in defendant's lobby, nor do we think that the one isolated instance where he bumped shoulders

* * * in the lobby would be sufficient to charge defendant with notice of the likelihood of injury to patrons or invitees resulting from his presence in the lobby under the facts outlined. 'Negligence which imposes liability must result from a faulty or defective foresight. (Not hindsight.) * * * On what should have been anticipated, rather than what happened.' The Hughes case, supra [359 Mo. 993, 224 S.W. 2d 995.] McCollum v. Winnwood Amusement Co., 332 Mo. 779, 59 S.W.2d 693, 696, 697; Nephlar v. Woodward, 200 Mo. 179, 98 S.W. 488; Panke v. Shannon, 357 Mo. 1195, 212 S.W.2d 792." 231 S.W.2d 1. c. 612.

Panke v. Shannon, Mo., 212 S.W.2d 792, points up the difficulty of holding one responsible for single isolated instances or incidents which result in injury. There a blacksmith was kicked by a landlord's mule while the landlord's tenant was using a twitch on the mule's nose to quiet him. The court said, "A mule's actions cannot be turned on and off like a machine by any certain pressure on a twitch; and we think it imposes an unreasonable standard to hold one responsible for failure to anticipate a mule's reactions under such circumstances." 212 S.W.2d 794[4].

In addition to those already mentioned, there are other cases from other states that are in point on the issue here. Representative is Clark v. City of Buffalo, 288 N.Y. 62, 41 N.E.2d 459, where a 7-year-old girl was struck in the eye by a piece of glass which, along with several stones, was picked up and thrown in her direction by a boy who was also present at the pool area in the city's Riverside Park. The court phrased the issue: "The problem, being one of causation, prompts the inquiry whether the record contains any evidence from which the jury could find that the proximate cause of injuries suffered by the plaintiff was a failure by the city to exercise reasonable care either in the maintenance of the park as a public place for recreation or in the supervision of facilities which it afforded

for children's play." 41 N.E.2d 1. c. 460 [2]. The reasoning and analysis employed in resolution of that issue are in point and persuasive in our case. "There is no evidence that prior to the accident the plaintiff, her two companions and the boy who threw the glass were quarrelsome; nor is there proof that anything had occurred in their play * * * from which the most vigilant life guard or attendant could have anticipated the unprovoked conduct of the boy whose sudden and impulsive act brought injury to the plaintiff. * * * that small piece of glass, when on the ground inert, was not inherently dangerous. Had it been permitted to remain there the plaintiff would not have suffered the injury which befell her. She was subjected to no harm from the glass until it was picked up and thrown. *Harm came to the plaintiff only after danger was created by the intervention of a third person,* a mischievous boy, *who on the impulse of the moment— of which no prior conduct on his part or by the plaintiff gave warning—picked up stones and glass and threw them toward the plaintiff* and her companions. * * * *The efficient cause of plaintiff's injuries was the wrongful act of a third person—an act which, in the circumstances, could not have been foreseen* in the exercise by the city of its legal duty [to exercise reasonable care] toward the plaintiff." (Italics and bracketed insert added.) 41 N.E. 2d 1. c. 461 [2]. From Arkansas comes Twin City Amusement Co. v. Salater, Ark., 372 S.W.2d 224, where a patron of a rock and roll concert was denied recovery against the holder of the concert for injuries sustained in an affray on the parking lot leased by the holder. The affray occurred after the concert when two Negroes approached a car and demanded that the white occupants sing a rock and roll song while at the same time trying to pull some of the car's occupants from the car. Isaac Salater and his carful of boys voluntarily went to the aid of the other group; a fight ensued and Isaac was injured. The case was treated as one of first impression in

Arkansas and, after reviewing several authorities including Hawkins v. Maine & New Hampshire Theater Co., supra, Whitfield v. Cox, supra, Dickinson v. Eden Theatre Co., supra, and Stevenson v. Kansas City, 187 Kan. 705, 360 P.2d 1, 29 A.L.R. 2d 911, and Restatement, Torts, § 348, the court concluded that "this was a sudden, unexpected and unforeseeable affray. * * * A statement in Stevenson v. Kansas City, supra, is apt: 'To foresee that plaintiff while attending the wrestling matches would be assaulted at the hour of 11:00 p. m. at the particular spot on the particular ramp on the way to the particular rest room in the Memorial Building in Kansas City would indeed require imaginative foresight and such is not the type of foreseeability required under our law. Only the standard of the reasonable and prudent man * * * is required.' * * * Nothing in the evidence suggests that more servants were necessary to provide reasonable security at the time and place here in question, or that more servants could have prevented the affray. Certainly a proprietor is not required to have an attendant, guard or usher for every patron." 372 S.W.2d l. c. 226[1, 2]. From Florida, Elmore v. Sones, Fla., 140 So.2d 59, is in point. A 7-year-old girl was injured when pushed by an unidentified boy from the "monkey bars" in an unsupervised playground maintained on theater premises for use of patrons. In dismissing her complaint the court said: " * * * [U]sually, even where the duty to supervise may be found to exist, the supervision need be general only as distinguished from special or immediate. It would not be necessary to furnish every patron with an usher or an attendant. See 16 A.L.R.2d 915. In the case before us it is not fairly inferable from the complaint that general supervision would have prevented the injury caused by the impetuous or wayward boy who did the pushing." 140 So.2d l. c. 62[3]. The subject could be pursued still further in Huddleston v. Clark, 186 Kan. 209, 349 P.2d 888; Napper v. Kenwood Drive-In Theatre

Co., Ky., 310 S.W.2d 270; Hickey v. Fox Ozark Theatres Corp., 156 Kan. 137, 131 P.2d 671; Ruehling v. American Legion Pavilion, Inc., 255 Minn. 391, 96 N.W.2d 702; Ford v. Brandan, Tenn.App., 367 S. W.2d 481; of all of which it might be said that the owners had greater reason for seeing to their patron's care than did defendants here, yet plaintiff in each failed to make a submissible case.

Finally, the law in this instance is well stated in Restatement, Torts, § 348, cited with approval in Hughes v. St. Louis Nat. League Baseball Club, supra, 224 S.W.2d l. c. 995[12], Dickinson v. Eden Theatre Co., supra, 231 S.W.2d l. c. 610[1], and in Twin City Amusement Co. v. Salater, supra, 372 S.W.2d l. c. 225–226 which says: " 'A * * * possessor of land who holds it out to the public for entry for his business purposes, is subject to liability to members of the public while upon the land for such a purpose for bodily harm caused to them by the accidental, negligent or intentionally harmful acts of third persons * * * if the possessor by the exercise of reasonable care could have

"(a) discovered that such acts were being done or were about to be done, *and*

"(b) protected the members of the public by

"(i) *controlling* the conduct of the third persons, or

"(ii) giving a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive * * *." (Italics added.)

Under these authorities and on the record here, we conclude that there is no evidence from which a jury could find the proximate cause of plaintiff's injury to be any failure of defendants to exercise ordinary care in any of the respects charged in plaintiff's petition. The evidence shows that plaintiff's injury was caused by the wrongful act of an unidentified child,

whose act of throwing the rock which struck plaintiff was a single, isolated, sudden, and unprovoked act which could be neither reasonably foreseen nor prevented.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.