**Al BAKER, Claimant-Respondent,**

v.

**KREY PACKING COMPANY, Employer and Self-Insurer-Appellant.**

No. 32094.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Rehearing Denied Dec. 16, 1965.

Application to Transfer Denied Feb. 14, 1966.

R. C. Reis, St. Louis, for employer and self-insurer-appellant.

Harry J. Nichols, St. Louis, for claimant-respondent.

DOERNER, Commissioner.

Appeal by the employer and self-insurer from a judgment of the Circuit Court of the City of St. Louis affirming a final award of the Industrial Commission, by which award the claimant was allowed compensation for a permanent partial disability.

Al Baker, the claimant, began to work for the Krey Packing Company, the employer, in 1955, driving hogs. In 1956 he was transferred to the employer's loading dock, where his duties consisted of loading and unloading trucks and trailers. On September 26, 1961, the date of the alleged accident, claimant was 34 years of age, six feet in height, and weighed about 160 pounds. He began work that day at noon, and about 4:00 P.M. he was engaged in loading a trailer with cardboard boxes con-

taining pork loins, lifting the boxes off of a handtruck on which they had been wheeled into the trailer and stacking them on top of one another. The boxes were 12 inches wide, 12 inches high, and 3 feet long, and had handholes at either end, like a beer case. Each contained 5 pork loins, about 32 inches in length, so that the loins were around 4 inches shorter than the boxes. At one point in his testimony claimant stated that the average weight of a loin was from 12 to 16 pounds, which would imply that the box in question may have weighed from 60 to 80 pounds, plus the 2 pound weight of the box; but on cross-examination he testified that the box he was stacking when the incident occurred was, " * * * around sixty or seventy pound box, somewhere around in there."

The stack of boxes in the trailer had reached a height of approximately 5 feet 10 inches when claimant attempted to place another box on it. In doing so he lifted the box off of the bed of the handtruck, about 8 inches off of the ground, put his left hand under the bottom of the box, rested the far end of the box on the top of the stack, and pushed the near end of the box with his right hand. When the far end of the box rested on top of the stack the box was at an angle of about 45 degrees, and as claimant pushed the near end with his right hand the loose loins in the box shifted back on him. As the weight shifted he felt a popping and pain in the lower part of his back. He leaned against the side of the trailer for a few minutes and then walked outside and reported the incident to his supervisor. Subsequent to the occurrence claimant continued to do the same work, and lost only 2 or 3 days up to the time of the hearing.

On cross-examination the claimant testified:

"Q. Now, loading trucks with boxes of loins like this is the type of thing that you do every day, is that right?

"A. That's right.

"Q. And these loins, you say, will shift in the box, they'll slide back. How far would you say they'd slide?

"A. Four inches, I guess.

"Q. When does this occur, when you are putting the box up there and when you push it forward to push it on top of the stack?

"A. When you go up, when you push it up the weight shifts back.

"Q. When you push it up to put it up on the stack, then is when it shifts back?

"A. Right.

"Q. It does this all the time?

"A. Yes.

"Q. This isn't unusual, is it?

"A. I guess not.

"Q. Because it happens almost every time you put the box up there?

"A. I don't get loins all the time. It's a different box, you know.

"Q. Well, how often, would you say, that you load boxes of loin? Do you do that almost every day sometimes?

"A. Right.

"Q. If there is some shifting in the box, that is very common and happens almost every time you handle one of these, is that right?

"A. Right."

In his amended claim claimant alleged that prior to the day in question, " * * * I had a congenital or developmental defect in my low back. This condition was a spondylolisthesis of L–5 on S–1; though this condition preexisted and disposed me to injury I had no prior disability from a functional standpoint prior to my injury of 9/27/61. * * *" The preexisting for-

ward displacement of claimant's 5th lumbar vertebra was confirmed by both Dr. Lee T. Ford, who testified on behalf of claimant, and Dr. George E. Scheer, who appeared on behalf of the employer. Dr. Ford rated the claimant's disability at the time of the hearing at 15 to 20% of the whole man, and took the position that since the pre-existing spondylolisthesis had not functionally disabled claimant, all of the disability was attributable to the alleged accident. Dr. Scheer, on the other hand, testified that claimant had a permanent partial disability of 20%, of which 15% was due to the preexisting spondylolisthesis and 5% due to the aggravation of that condition. Both of the doctors agreed that the preexisting spondylolisthesis created an unstable condition of the vertebrae which made claimant more susceptible to injury.

The Industrial Commission presumably adopted the view of Dr. Scheer, for by its final award it found that the claimant had incurred a permanent partial disability of 5% of the body as a whole, caused by the aggravation of the preexisting spondylolisthesis which had a disabling effect of 15%. The compensation awarded was $40 per week for 20 weeks for the permanent partial disability. In support of its finding that the claimant had suffered an accident arising out of and in the course of his employment the Industrial Commission stated:

"The Commission finds that when the pork loins shifted in the box which employee was lifting, same constituted an accident within the meaning of the Workmen's Compensation Statutes."

 The sole point raised by the employer in its appeal is that the trial court erred in affirming the final award of the Industrial Commission for the reason that the claimant did not sustain an accident within the meaning of the Workmen's Compensation Law. By way of establishing a basis for the scope of our review it is appropriate to point out that the employer did not offer any evidence regarding the occurrence in question and that the only

evidence on that feature of the case is that contained in the testimony of the claimant. Thus no question of conflict, credibility or weight is present. This, then, is a case where the award which the Commission should have entered became a question of law. Corp v. Joplin Cement Co., Mo., 337 S.W.2d 252; Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W. 2d 292. And where, as here, the finding of the ultimate fact by the Commission is reached by the interpretation or application of the law, as distinguished from a determination of facts, it is not binding upon us and falls within our province of review and correction. Merriman v. Ben Gutman Truck Service Co., supra; Williams v. Anderson Air Activities, Mo.App., 319 S.W. 2d 61.

Thus the precise question presented is whether, as a matter of law, the occurrence is an accident within the ambit of our Compensation Law. That term is defined in Section 287.020(2), RSMo 1959, V.A.M.S., to mean: "The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury." As the court pointed out in Hall v. Mid-Continent Mfg. Co., Mo.App., 366 S.W.2d 57, 60, the question as to just what facts and circumstances constitute an accident so as to be compensable under our Compensation Law has been disputed for many years; and in determining the law and applying it to various factual situations the Missouri appellate courts in the past have not been completely consistent. However, more recent decisions have clarified the statutory definition in those cases involving the intentional act of the employee in exerting muscular force. The decision of this court in Howard v. St. Louis Independent Packing Co., Mo.App., 260 S.W.2d 844, 845, that "* * * where the injury results from the intentional act of the employee in exerting muscular force * * *" it cannot be classified as an accident under the Compensation Law unless

there is "* * * some unusual occurrence, such as a slip, or a fall, or an abnormal strain * * *" was expressly overruled by the Supreme Court en Banc in Crow v. Missouri Implement Tractor Co., Mo., 307 S.W.2d 401. The court there stated that it had examined many cases from other jurisdictions and found the general rule to be that an abnormal strain causing an injury to a workman may be classified as an accident. However, in reaching the conclusion that an *abnormal* strain or exertion constituted an accident the court was careful to distinguish such occurrences from those in which the injury results from a normal strain or exertion. Pointing to the Commission's finding in State ex rel. Hussman-Ligonier Co. v. Hughes, Mo., 348 Mo. 319, 153 S.W.2d 40, 41, "* * * that employee, at the time of said alleged accident, was not subjected to any unusual strain or exertion but was doing the usual and ordinary work incidental to his employment * *" and its decision that no accident had occurred, the court said (307 S.W.2d 401, 404): "* * * The vital difference between the two cases is that in the Howard case the abnormal strain caused the injury complained of while in the Hussman-Ligonier case, the injury was the result of natural causes and no abnormal strain was present."

Decisions subsequent to the Crow case have served to emphasize and illustrate the vital difference between the two lines of cases. In Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, claimant was engaged in installing kitchen equipment and got under a heavy table to raise it by resting it on his back. In order to move it off of the legs he raised himself on his toes and gave an "extra surge of power," which caused an injury to his back. The court held the claimant had suffered an abnormal strain and that his injury resulted from a compensable accident. To the same effect is Brotherton v. International Shoe Co., Mo. App., 360 S.W.2d 108, where the claimant, having exhausted other means, sought to unlock a perforating machine by using a pipe wrench with a pipe over the handle to gain more leverage. He bounced up and down on the pipe in his effort, his foot slipped, and his back was injured. Basing its decision not on the combination of muscular exertion and slipping, but on the basis of the claimant's abnormal and unusual strain, the court held that claimant had sustained a compensable accident. The most recent of this line of cases is that of Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, where claimant, a truck driver, while engaged in making deliveries, sought to move a heavy coil of rope in order to get to certain boxes and containers. Because other shipments were in his way the claimant attempted to lift the rope while in an extended and unusual position, using all of the strength he had. As a result he sustained an injury to his back. The court reviewed the Crow, Williams and Brotherton cases, supra, and held (392 S.W.2d 298) that: "* * * The strain was thus abnormal; was unexpected in that it was more strain than claimant anticipated he would exert, and hence was an accident within the meaning of Section 287.020(2), supra. * * *" However, in again emphasizing the distinction between a case where an abnormal strain is present and those in which no such exertion occurred, the Supreme Court continued: "* * * For these same reasons (abnormal strain and unusual position), this case is not a case of disability overtaking the claimant while at work as did the claimants' heart conditions in State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40, and De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834; nor is it like a case of pneumonia resulting from exposure in the ordinary course of work as in Joyce v. Luse-Stevenson Co., 346 Mo. 58, 139 S.W.2d 918; and it is not like the case of usual work in righting a barrel of oil in the same manner as on many other occasions as in Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W.2d 257."

While there were earlier cases in which compensation was denied where the injury was the result of performing routine work

in a normal manner, as in Higbee v. A. P. Green Fire Brick Co., Mo.App., 191 S.W. 2d 257 and Sciortino v. E. Salia & Co., Mo. App., 157 S.W.2d 535, we have found but one decision subsequent to that of Crow v. Missouri Implement Co., supra, which falls within the other line of cases. We refer to Hall v. Mid-Continent Mfg. Co., Mo. App., 366 S.W.2d 57, where because of a faulty notching machine it was so difficult for the operator to extract aluminum extrusions that at times the combined efforts of two women were required to pull them loose. On the occasion in question the claimant, in an attempt to remove the stuck material, put one foot up on the machine and with both hands pulled as hard as she could. As she did so she experienced an intense pain in the lower part of her abdomen, and on being examined by a physician was found to have sustained a hernia. The Industrial Commission denied compensation, the final award was affirmed by the circuit court, and in upholding the Commission's final award the court pointed out (366 S.W.2d 57, 63):

"In our case Mrs. Hall does not claim that she slipped or fell. She was doing the same work that she had done for months and doing it in the same way. Her method in attempting to loosen the machine was identical with the method used by her on various other occasions and over a period of many months. The Commission found 'it was routine for the employee on occasion to place her foot on the machine for additional pulling power as she struggled to remove the extrusion'. There is substantial evidence to support this conclusion. The Commission found that on this occasion she was not exerting any more force or pulling in any different manner than on other occasions. And further, the strain cannot be said to have been abnormal or unexpected—'Only the result, to-wit; the injury, can be said to have been unexpected'. We believe that all of these conclusions are

supported by the evidence. It must be remembered that this court, as to factual findings, cannot substitute its judgment for the finding of the Commission, but rather must affirm that body unless the findings are unsupported by substantial evidence.

"It is our ultimate conclusion that under the law and the facts the Commission was correct in holding that 'employee did not sustain an injury by accident arising out of and in the course of her employment'."

Having in mind the vital difference between the two lines of cases which was pointed out in Crow v. Missouri Implement Tractor Co., supra, and reaffirmed in Merriman v. Ben Gutman Truck Service, Inc., supra, and after carefully considering the facts in the instant case, we have reached the conclusion that claimant did not sustain an accident within the meaning of that word as defined in Section 287.020(2). Because of the claimant's preexisting spondylolisthesis which predisposed the claimant to injury the facts in the instant case are very similar to those in De Lille v. Holton-Seelye Co., 334 Mo. 464, 66 S.W.2d 834 and State ex rel. Hussman-Ligonier Co. v. Hughes, 348 Mo. 319, 153 S.W.2d 40. Those cases established the rule that an employee with a latent preexisting condition whose disability or death is caused or hastened by the normal exertion required by the nature of his work does not sustain a compensable accident. We prefer, however, to rest our decision on the broader ground that the occurrence as described by the claimant did not constitute an accident within the statutory definition. No evidence was introduced nor is any claim made that the claimant slipped or fell. According to his own testimony he was doing exactly the same kind of work he had done practically every working day for approximately five years, and was performing it in his usual and customary manner. The Industrial Commission did not find and the evidence does not in-

dicate that claimant was in any extended position while lifting or pushing on the box, or that he exerted any abnormal muscular force while in that position, which combination of factors formed the basis for the court's decision in Merriman v. Ben Gutman Truck Service, Inc., supra. Nor can it be successfully contended, in the light of claimant's own testimony, that the shifting of the loins in the box was " * * * an unexpected or unforeseen event happening suddenly and violently * * *" within the contemplation of the statute. For according to the claimant, the weight shifted "almost every time" he handled one of the boxes and there was no evidence that the shift of the weight in this box exerted any unusual force on claimant or subjected him to any unusual strain. In short, all that claimant's evidence showed was that the injury occurred while he was performing his routine work in a normal manner, a factual situation which does not constitute a compensable accident under the Workmen's Compensation Law. Crow v. Missouri Implement Tractor Co., supra; Merriman v. Ben Gutman Truck Service, Inc., supra; Higbee v. A. P. Green Fire Brick Co., supra; Sciortino v. E. Salia & Co., supra.

It follows that the judgment of the circuit court should be reversed and the cause remanded with directions to enter up a new judgment reversing the final award of the Industrial Commission. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is reversed and the cause remanded with directions to enter up a new judgment reversing final award of the Industrial Commission.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.