Florence E. McGRATH, Dependent Widow of Thomas B. McGrath, Deceased Employee, Appellant,

v.

RAILWAY EXPRESS AGENCY, INC., Employer, and Aetna Casualty and Surety Co., Insurer, Respondents.

No. 32255.

St. Louis Court of Appeals.

Missouri.

Jan. 17, 1967.

Gene R. Spengel, Jr., Joseph Fitzhenry, St. Louis, for appellant.

Luke, Cunliff, Wilson, Herr & Chavaux, William J. McCluggage, St. Louis, for respondents.

DOERNER, Commissioner.

This claim for compensation under our Workmen's Compensation Law was filed by Florence E. McGrath, the widow of Thomas B. McGrath, a former employee of Railway Express Agency, Inc. in St. Louis. On April 5, 1962, towards the end of his work day, McGrath, a chauffeur, was discovered lying alongside the truck he had operated, which had been backed up to his employer's loading dock. He died early the next morning from a subdural hemorrhage, subsequent to a fractured skull, according to an autopsy performed by the Coroner's physician. The claimant alleged in her claim that the employee had slipped while climbing from the truck to the employer's loading dock. This was denied by the employer and its insurer, and the actual and sole issue in dispute was whether the injury arose out of and in the course of the employment. The referee found in favor of claimant, but upon appeal by the employer and insurer the Industrial Commission entered a final award in which it found that the employee died from conditions secondary to an idiopathic fall, that the evidence failed to show any hazard or special risk from such a fall peculiar to the employment, and denied compensation, citing Howard v. Ford Motor Co., Mo.App., 363 S.W.2d 61. The claimant then appealed to the Circuit Court, which affirmed the award, and has now sought our review.

The parties are in accord as to the applicable law. Claimant asserts, and the employer and insurer concede, that when, as here, an employee is found injured at a place where his duty required him to be a rebuttable presumption arises that he was injured in the course of and in consequence of his employment. Toole v. Bechtel Corp., Mo., 291 S.W.2d 874; Duff v. St. Louis Mining & Milling Corp., 363 Mo. 944, 255 S.W.2d 792; Mershon v.

Missouri Public Service Corp., 359 Mo. 257, 221 S.W.2d 165. For their part, the employer and insurer maintain, and claimant agrees, that such presumption, being merely procedural, disappears when the employer produces substantial rebutting evidence on the issue of how the injury occurred, and that thereafter the issue must be determined solely on the evidence as though no presumption had ever existed. Kelley v. Sohio Chemical Co., Mo., 392 S.W.2d 255; Toole v. Bechtel Corp., supra; Duff v. St. Louis Mining & Milling Corp., supra. Where they differ is in their view of the evidence. Claimant argues that the employer and insurer did not produce substantial credible evidence of how the injury occurred, while the employer and insurer contend to the contrary. Thus the controversy between the parties really devolves into the questions of whether there was competent and substantial evidence to support the finding of the Commission, in effect, that the deceased did not die from an injury which arose "out of" his employment, and whether that finding is contrary to the overwhelming weight of the evidence. Section 536.140, RSMo 1959, V.A.M.S.; Corp v. Joplin Cement Co., Mo., 337 S.W.2d 252; Brown v. Anthony Manufacturing Co., Mo., 311 S. W.2d 23. It is appropriate to stress that in determining those questions we must view the evidence, including all legitimate inferences to be drawn therefrom, in the light most favorable to the award made by the Industrial Commission; Snowbarger v. M. F. A. Central Co-op., Mo., 349 S.W.2d 224; and that we may not substitute our judgment on the evidence for that of the Commission. Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292; Snowbarger v. M. F. A. Central Co-op., supra; Marie v. Standard Steel Works, Mo., 319 S.W.2d 871.

At the time of his death, on April 6, 1962, McGrath was 59 years of age and had been continuously working for the employer for a period of 26 years. He had been treated for emphysema by Dr. Joseph Vacca, his own physician, for several years prior to his death, and by at least 5 different doctors during the 6 years preceding that event. In 1960 he was off work 24 days and in the hospital 5 days because of emphysema and bronchitis; in 1958 he was off work for the same condition for a period of 17 days; and in 1956 he was off work for a period of 3 months and 5 days because of emphysema and arthritis. As a chauffeur for the employer his duties were to deliver packages and parcels to the addresses to whom they had been sent, and to pick-up similar freight from those who desired to send it to others. For that purpose he drove a Dodge delivery van, and his work day was from 9:30 A.M. to 6:00 P.M. Pick-ups made during the day were normally unloaded by him at the employer's loading dock, which had doors numbered 1 through 27, all of which were double doors. Billed freight was unloaded at certain doors and unbilled freight at others.

Neither party produced an eye-witness to the occurrence. Claimant called as her witness J. S. Shaffer, the employer's supervisor of vehicle service and the deceased employee's immediate supervisor, who testified that at about 5:05 P.M. he talked to McGrath at Door 1. At that time McGrath's truck was partially loaded with his pick-ups for the day, and was backed up to Door 1, where he had taken something off. Shaffer related that in the course of making a routine inspection he then talked to other drivers, and McGrath pulled his truck out. About 3 to 5 minutes later another chauffeur, Pete Bowe, came up and said that McGrath had flipped out on the street. He went to Door 8, where McGrath's truck was backed up to the loading dock, and saw McGrath lying on the pavement. He was about 15 or 20 inches from the left or driver's side of the van, with his feet approximately 4 to 4½ feet from the dock, or a little farther, and his head almost even with the door of the truck. The door was closed, the motor was off, and the brakes were set. It was developed that some drivers got out on the left side of their trucks, others on the right and that normally, aft-

er parking, it would have been McGrath's duty to go up on the loading platform, which was about 40 inches above the pavement, to unload his truck. Steps from the pavement to the loading platform were located between doors 9 and 10, and at other doors the drivers usually ascended from the pavement by stepping onto a step on the truck, about 18 or 20 inches high, and then stepping onto the loading dock.

Shaffer stated that about a minute or so after he reached McGrath he asked him to which hospital he desired to be taken, City Hospital or Incarnate Ward. McGrath was then conscious and rational, recognized him, and replied that he wanted to be taken to the City Hospital. An ambulance had been called and shortly arrived, as did Officer John Jones, of the St. Louis Metropolitan Police Department, in a patrol car. Shaffer and Jones rode in the ambulance with McGrath to City Hospital No. 1. On cross-examination Shaffer testified that on the way to the hospital McGrath was conscious and rational and that:

"A * * * I asked Mr. McGrath if he could tell me what happened, I had to make out reports, did he try to get on the platform or what happened? He walked around the right side of the truck. As he walked around the front of his truck he doesn't remember any more.

"Q Did you ask him specifically if he had try (sic) to get on the platform?

"A Yes, sir.

"Q What did he say?

"A Said, no, he hadn't got that far.

"Q Did you ask him specifically if he had tried to climb on his truck to get on the platform?

"A He didn't remember that. The only thing he remembered was going around the front of the truck. He hadn't tried to climb up.

"Q Didn't try to climb up on the platform of the truck?

"A No."

Shaffer also related that enroute to the hospital Officer Jones kept looking at McGrath and remarked that he knew him from somewhere. Shaffer observed that McGrath had run his route for several years and suggested that Jones might know McGrath from being around the City Hospital. Jones negatived that suggestion and stated it was from some other place. At that point McGrath raised his head a little from the cot on which he was lying and said, "* * * 'I see church.' * * *" Jones agreed that was right and recalled that McGrath was an usher there. After arriving at the hospital, Shaffer related, he inquired of McGrath whether he had turned in his tickets. McGrath said he had not, reached in his pocket, handed Shaffer his delivery schedule for the day, and stated that the abstracts which covered his pick-ups were in his truck. Shaffer found them there when he got back to McGrath's truck.

The claimant also called Officer Jones as a witness on her behalf, who testified that he had been dispatched to investigate a "sick case" at the employer's place of business. On arrival he found McGrath lying face-up, next to and on the left side of a truck, in an unconscious condition but later he became slightly conscious. There were no visible signs of injury. With Shaffer he accompanied McGrath to the City Hospital. On direct examination he was asked if while enroute he attempted to question McGrath and answered that he had but that, "* * * I couldn't get any responsive answers." He also related that when they reached the hospital McGrath gave as his residence an address which it later developed was one where he had lived 10 years before. Jones described McGrath as being in what he termed, "* * * a dazed condition. He didn't know where he was at the time"; and said that while McGrath's speech itself was plain, what he said was incorrect. But other than that of

the wrong address, there was no showing that McGrath had given any other incorrect answer. Still on direct examination, Jones was asked whether he had inquired of McGrath as to how he had been injured or happened to be lying on the ground, and after fixing the time as about 25 or 30 minutes after he had arrived at the loading dock, testified that McGrath stated he didn't know. On cross-examination Jones stated that the regular procedure was to ask someone who was sick if they want to go to a hospital, and to obtain his permission to take him there, but that he couldn't recall whether he had had such a conversation with McGrath. He also recalled that Shaffer attempted to talk to McGrath on the way to the hospital but couldn't recall what the conversation was between them. He did recall, however, that he had recognized McGrath as an usher in the church, and that he had had a conversation with McGrath about that. Claimant introduced as her exhibit the police report made out by Officer Jones which described the type of report as a "sick case," gave the cause as "Blackout," and described the circumstances, as related to him by Shaffer, that McGrath had parked his truck at the loading dock, walked around his truck and passed out. On re-direct examination, *by claimant,* he was asked the source of his information, and answered:

"A   Most of these—would be from the witnesses. The blackout, I believe, was from the witnesses and from Mr. McGrath further stating everything went black, he didn't remember what happened, and from the diagnosis from the hospital would be the ill health.

"Q   Where did Mr. McGrath say that he had a blackout?

"A   At the hospital; said just everything went black, he didn't know what happened."

Mrs. McGrath, the claimant, testified that two fellow-drivers called at her home, informed her that McGrath was in the hospital, and took her there. She asked him what had happened but, she stated, he couldn't talk and couldn't answer her. She and her brother-in-law arranged for McGrath's removal to the Firmin Desloge Hospital, and called Dr. Vacca to treat him. Over objection she was permitted to state that before leaving for work on the morning of April 5, 1962, her husband had said that he "felt fine that morning." On cross-examination she identified her signature on a Group Hospital Insurance Form, dated May 4, 1962, in which the typewritten answer "No" appeared after the printed question, "Did ailment arise out of patient's employment?"

■■   The statements made by McGrath to Officer Jones and Shaffer constituted substantial evidence. Toole v. Bechtel Corp., supra. There is not a scintilla of evidence, either in McGrath's statements or elsewhere in the record, from which it could be inferred that he fell as he got out of his truck or as he attempted to climb up onto the loading dock. On the contrary, McGrath's statements amply support the conclusion that he had gotten out of his truck and walked around it towards the loading dock but before reaching it had fainted or passed out, as a result of which he fell to the pavement and fractured his skull. In short, the Commission could reasonably find, as it did, that McGrath's death was the result of an idiopathic fall. And as stated in Howard v. Ford Motor Co., Mo.App., 363 S.W.2d 61, 67:

"The majority rule in the idiopathic fall cases apparently is that the evidence must show a hazard connected with the employment not common to the general public or a special risk peculiar to the employment which caused or substantially contributed to cause the injuries, else liability does not arise. We believe that such is and ought to be the rule in this jurisdiction. * * *"

The photographs introduced in evidence show that the area where McGrath was found lying was almost level and was paved with concrete. A floor, sidewalk or drive-

way so paved is not such a hazard or special risk peculiar to the employment as will justify an award of compensation for injuries resulting from an idiopathic fall. Howard v. Ford Motor Company, supra.

 We hold that the findings of the Industrial Commission are abundantly supported by competent and substantial evidence. Duff v. St. Louis Mining & Milling Corp., supra; Mershon v. Missouri Public Service Corp., supra. The judgment of the Circuit Court affirming the award of the Commission is therefore affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.